# EXHIBIT 1

38

1          CALIFORNIA BOARD OF PRISON TERMS

2                  D E C I S I O N

3          **PRESIDING COMMISSIONER DALY:**  -- record?

4          **DEPUTY COMMISSIONER HARMON:**  Yes, you are.

5          **PRESIDING COMMISSIONER DALY:**  Okay, we are

6     back on record in the matter of Samuel Arreola.

7     And the Panel has reviewed all of the information

8     received from the Public and relied on the

9     following circumstances in concluding that the

10    prisoner is not suitable for parole and would pose

11    an unreasonable risk of danger to society or a

12    threat to public safety if released from prison.

13    The offense in itself was a very cruel and a very

14    callous crime.  It was carried out in a rather

15    calculated manner in that there was no need for

16    this crime to have occurred.  And the victim was

17    stabbed to death during the offense.  And the

18    offense was carried out in a manner that showed a

19    callous disregard for human suffering.  The motive

20    for the crime was extremely trivial in relation to

21    the offense in that there had been an altercation

22    and the victim -- the prisoner had been hit in the

23    eye, but then things calmed down and so there was

24    plenty of opportunity for the victim -- the

25    prisoner to get away from the victim.  This crime

26    occurred on August 31st of 1983 at a farm labor

27    **SAMUEL ARREOLA    C-94761    DECISION PAGE 1   5/10/05**

39

1   camp and work had been down for a couple of days

2   and everyone had been drinking beer. And there was

3   a fight between the victim and the prisoner and

4   others, apparently, who were at the camp. And then

5   the prisoner started drinking beers with friends

6   who appear to have goaded him into continuing a

7   fight with Hernandez. The prisoner armed himself

8   with a 14 inch kitchen knife from the camp kitchen

9   and his friend armed himself with a smaller knife

10  and then they confronted Hernandez. The victim was

11  stabbed to death by the prisoner. The prisoner had

12  no prior criminal history. He had not been

13  arrested or part of the criminal justice system,

14  and actually his social history, although poor,

15  there was no abuse or anything in his family. And

16  he is married and has 11 children and he has good

17  support from his family. The prisoner has

18  programmed in a limited manner while incarcerated.

19  He has been in education programs, but has

20  plateaued out and therefore has been dropped from

21  any further learning. He had failed to develop a

22  marketable skill and he has not sufficiently

23  participated in beneficial self-help programs. He

24  has only had two counseling chronos, one in 1996

25  and one in 1998, so his behavior in prison has been

26  very good. He has tried to abide by the rules.

27  **SAMUEL ARREOLA   C-94761   DECISION PAGE 2   5/10/05**

40

1  And the psychiatric psychological report dated
2  12/17 of '04 and authored by Dr. Stack is not
3  totally supportive of release.  And Dr. Stack
4  indicates that
5          "If released to the community, inmate
6          Arreola's violence potential remains
7          questionable.  And of some concern is
8          the fact that inmate Arreola appears
9          to have presented many different
10         versions of the crime and the
11         relationship of alcohol to the
12         commitment offense.  However, he has
13         accepted responsibility for the crime
14         and he stated that he has not changed
15         his story concerning the use of
16         alcohol.  He stated he was drinking
17         on the day of the crime and, in his
18         opinion, was not inebriated.  And
19         alcohol remains a significant risk
20         factor for this inmate."
21 Then the prior report, which was prepared in April
22 of '02 by Dr. Hewchuk, H-E-W-C-H-U-K, indicates
23 that
24         "While the statistical probability of
25         a 68 year old man committing homicide
26         is extremely low, actual behavior
27 **SAMUEL ARREOLA   C-94761    DECISION PAGE 3   5/10/05**

41

```
 1          becomes difficult to predict if the
 2          use of alcohol becomes a part of the
 3          equation.  And from this perspective,
 4          community risk is probably higher
 5          than average at this time."
 6     And he also says that
 7          "His inability or reluctance to
 8          assume full responsibility for the
 9          instant offense appears to be a
10          constant during the last several
11          years of incarceration.  And he is
12          doubtful that further incarceration
13          would impact significantly on the
14          status quo."
15     The parole plans -- When you get new letters for
16     your parole plans, from your family, they need to
17     be very specific about the land that you own and
18     the farm and where you will be working, because
19     they don't really talk about what you would be
20     doing in your letter.  When I had asked you, you
21     know, about what you would do about your alcohol,
22     our concerns are the same as the doctor's in that
23     you decided -- you said that alcohol was not really
24     a factor and that you only drank once in a while
25     when you had been invited to have a beer.  The
26     hearing Panel notes that 3042 notices indicate
27     SAMUEL ARREOLA   C-94761   DECISION PAGE 4   5/10/05
```

42

1    opposition to a finding of parole suitability,

2    specifically from the District Attorney of Fresno

3    County, who was at the hearing today.   Other

4    information that was considered was the

5    inconsistencies from the inmate as to taking

6    responsibilities for this crime and a recognition

7    of alcohol and the part it played in this crime.

8    Nevertheless, the prisoner should be commended for

9    the fact that he has attended AA.   He has worked in

10   culinary as a food server and as a cleanup crew,

11   the leadman in the kitchen.   He has been in English

12   as a Second Language, the bakery cleanup crew, and

13   in the dining room.   And he has attempted to the

14   best of his ability, because he's had about 1,000

15   hours of work within the school in trying to learn.

16   However, these positive aspects of his behavior do

17   not outweigh the factors of unsuitability.   In a

18   separate decision, the hearing Panel finds it is

19   not reasonable to expect that parole would be

20   granted at a hearing during the following two

21   years.   And the reason is that the prisoner

22   committed the offense in an especially cruel

23   manner.   Specifically, he was a farm worker and

24   several of them had been drinking beer.   He had had

25   an altercation with the victim.   And as a result,

26   he approached the victim and stabbed him with a

27   **SAMUEL ARREOLA    C-94761    DECISION PAGE 5  5/10/05**

43

1    knife, killing him.  The offense was carried out

2    very dispassionately and it was a calculated effort

3    on the part of the prisoner and the victim was

4    abused by being stabbed to death.  And the offense

5    was carried out in a manner that showed a total

6    disregard for the human suffering or the

7    consequences of his actions.  And the motive for

8    the crime was extremely trivial in relation to the

9    offense in that the prisoner had plenty of

10   opportunity to leave the area or to have no further

11   contact with the victim.  The recent psychiatric

12   psychological report dated 12/17 of '04 and

13   authored by Dr. Stack is not totally supportive of

14   release at this time.  And the prisoner has not

15   been involved in the programming which would help

16   give him, you know, some insight into this crime.

17   Therefore, a longer period of observation and

18   evaluation of the prisoner is required before the

19   Board should find the prisoner is suitable for

20   parole.  We're asking, Mr. Arreola, that you remain

21   disciplinary free and if available, participate in

22   AA or whatever self-help that you have.  And then

23   we will see you in two years.  Do you have any

24   comments?

25          **DEPUTY COMMISSIONER HARMON:**  Nothing

26   further.  I wish you luck, sir.

27   **SAMUEL ARREOLA    C-94761    DECISION PAGE 6  5/10/05**

44

1          **PRESIDING COMMISSIONER DALY:** That concludes

2    the hearing.  It is 12:15.  Thank you very much.

3          **INMATE ARREOLA THROUGH INTERPRETER:** Thank

4    you.

5                          --oOo--

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23    PAROLE DENIED TWO YEARS

24    THIS DECISION WILL BE FINAL ON: _____ SEP - 7 2005 _____

25    YOU WILL BE PROMPTLY NOTIFIED IF, PRIOR TO THAT

26    DATE, THE DECISION IS MODIFIED.

27    SAMUEL ARREOLA   C-94761   DECISION PAGE 7  5/10/05

45

## CERTIFICATE AND

## DECLARATION OF TRANSCRIBER

I, MATTHEW YATES, a duly designated transcriber, CAPITOL ELECTRONIC REPORTING, do hereby declare and certify under penalty of perjury that I have transcribed tape(s) which total one in number and cover a total of pages numbered 1 through 44, and which recording was duly recorded at CORRECTIONAL TRAINING FACILITY at SOLEDAD, CALIFORNIA, in the matter of the SUBSEQUENT PAROLE CONSIDERATION HEARING of SAMUEL ARREOLA, CDC No. C-94761, on MAY 10, 2005 and that the foregoing pages constitute a true, complete, and accurate transcription of the aforementioned tape(s) to the best of my ability.

I hereby certify that I am a disinterested party in the above-captioned matter and have no interest in the outcome of the hearing.

Dated May 26, 2005 at El Dorado County, California.

_____
Matthew Yates
Transcriber
**CAPITOL ELECTRONIC REPORTING**