# EXHIBIT   2

Samuel Arreola

The foregoing instrument is a correct copy of the original on file in this office.

Address  P.O.BOX 689-GW-24

ATTEST: APR 2 4 2008

Soledad, Ca. 93960

TAMARA L. BEARD, Superior Court Clerk State of California, County of Fresno
By _____
DEPUTY

F I L E D

MAR 13 2006

FRESNO SUPERIOR COURT

By _____
DEPUTY

CDC or ID Number    C94761

California Superior Court

For the County of Fresno
*(Court)*

| Samuel Arreola  @ 2471727 | PETITION FOR WRIT OF HABEAS CORPUS |
|---|---|
| Petitioner | 06CRWR677796 |
| vs. | No. ~~????~~ |
| Anthony Kane, Warden | *(To be supplied by the Clerk of the Court)* |
| Respondent | |

## INSTRUCTIONS — READ CAREFULLY

- **If you are challenging an order of commitment or a criminal conviction and are filing this petition in the Superior Court, you should file it in the county that made the order.**

- **If you are challenging the conditions of your confinement and are filing this petition in the Superior Court, you should file it in the county in which you are confined.**

- Read the entire form *before* answering any questions.

- This petition must be clearly handwritten in ink or typed. You should exercise care to make sure all answers are true and correct. Because the petition includes a verification, the making of a statement that you know is false may result in a conviction for perjury.

- Answer all applicable questions in the proper spaces. If you need additional space, add an extra page and indicate that your answer is "continued on additional page."

- If you are filing this petition in the Superior Court, you need file only the original unless local rules require additional copies. Many courts require more copies.

- If you are filing this petition in the Court of Appeal, file the original and four copies.

- If you are filing this petition in the California Supreme Court, file the original and thirteen copies.

- Notify the Clerk of the Court in writing if you change your address after filing your petition.

- In most cases, the law requires service of a copy of the petition on the district attorney, city attorney, or city prosecutor. See Penal Code section 1475 and Government Code section 72193. You may serve the copy by mail.

Approved by the Judicial Council of California for use under Rules 56.5 and 201(h)(1) of the California Rules of Court [as amended effective January 1, 1999]. Subsequent amendments to Rule 44(b) may change the number of copies to be furnished the Supreme Court and Court of Appeal.

Page one of six

Form Approved by the
Judicial Council of California
MC-275 [Rev. January 1, 1999]

**PETITION FOR WRIT OF HABEAS CORPUS**

Penal Code, § 1473 et seq.,
Cal. Rules of Court, rules 56.5, 201(h)

This petition concerns:

[  ] A conviction                    [XX] Parole

[XX] A sentence                     [X] Credits

[  ] Jail or prison conditions       [  ] Prison discipline.

[  ] Other *(specify)*: _____

1. Your name: __Samuel Arreola__

2. Where are you incarcerated? __Correctional Training Facility, located at Soledad, California__

3. Why are you in custody?    [XX] Criminal Conviction    [  ] Civil Commitment

*Answer subdivisions a. through i. to the best of your ability.*

   a. State reason for civil commitment or, if criminal conviction, state nature of offense and enhancements (for example, "robbery with use of a deadly weapon").

   __Second Degree Murder conviction with the use of knife.__

   _____

   b. Penal or other code sections: __Penal Code Sections 187 and 12022 (b).__

   c. Name and location of sentencing or committing court: __Fresno County Superior Court__

   _____

   d. Case number: __304800-6__

   e. Date convicted or committed: __1984__

   f. Date sentenced: __1984__

   g. Length of sentence: __15-years to life plus one year for the use of knife.__

   h. When do you expect to be released? __No release date have been set yet__

   i. Were you represented by counsel in the trial court?   [XX] Yes.   [  ] No.   If yes, state the attorney's name and address:
   __?__

   _____

4. What was the LAST plea you entered? *(check one)*

   [X] Not guilty    [  ] Guilty    [  ] Nolo Contendere    [  ] Other: _____

5. If you pleaded not guilty, what kind of trial did you have?

   [X] Jury    [  ] Judge without a jury    [  ] Submitted on transcript    [  ] Awaiting trial

b. GROUNDS FOR RELIEF

**Ground 1:** State briefly the ground on which you base your claim for relief. For example, "the trial court imposed an illegal enhancement." *(If you have additional grounds for relief, use a separate page for each ground. State ground 2 on page four. For additional grounds, make copies of page four and number the additional grounds in order.)*

_____

SEE ATTACHED HERETO GROUNDS, FACTS AND AUTHORITIES

_____

_____

a. Supporting facts:
Tell your story briefly without citing cases or law. If you are challenging the legality of your conviction, describe the facts upon which your conviction is based. *If necessary, attach additional pages.* CAUTION: You must state facts, not conclusions. For example, if you are claiming incompetence of counsel you must state facts specifically setting forth what your attorney did or failed to do and how that affected your trial. Failure to allege sufficient facts will result in the denial of your petition. (See *In re Swain* (1949) 34 Cal.2d 300, 304.) A rule of thumb to follow is: *who* did exactly *what* to violate your rights at what time *(when)* or place *(where)*. *(If available, attach declarations, relevant records, transcripts, or other documents supporting your claim.)*

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

b. Supporting cases, rules, or other authority (optional):
*(Briefly discuss, or list by name and citation, the cases or other authorities that you think are relevant to your claim. If necessary, attach an extra page.)*

_____

_____

_____

_____

7. Ground 2 or Ground _____ (*if applicable*):

SEE ATTACHED HERETO GROUNDS, FACTS AND AUTHORITIES

_____

_____

_____

a. Supporting facts:

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

b. Supporting cases, rules, or other authority:

_____

_____

_____

_____

_____

_____

d you appeal from the conviction, sentence, or commitment? ☐ Yes. ☐ No.    If yes, give the following information:

  a. Name of court ("Court of Appeal" or "Appellate Dept. of Superior Court"):

    _____

  b. Result: _____    c. Date of decision: _____

  d. Case number or citation of opinion, if known: _____

  e. Issues raised: (1) _____

       (2) _____

       (3) _____

  f. Were you represented by counsel on appeal? ☐ Yes. ☐ No.   If yes, state the attorney's name and address, if known:

    _____

9. Did you seek review in the California Supreme Court? ☐ Yes. ☐ No.    If yes, give the following information:

  a. Result: _____    b. Date of decision: _____

  c. Case number or citation of opinion, if known: _____

  d. Issues raised: (1) _____

       (2) _____

       (3) _____

10. If your petition makes a claim regarding your conviction, sentence, or commitment that you or your attorney did not make on appeal, explain why the claim was not made on appeal:

  _____

  _____

11. Administrative Review:

  a. If your petition concerns conditions of confinement or other claims for which there are administrative remedies, failure to exhaust administrative remedies may result in the denial of your petition, even if it is otherwise meritorious. (See *In re Muszalski* (1975) 52 Cal.App.3d 500 [125 Cal.Rptr. 286].) Explain what administrative review you sought or explain why you did not seek such review:

    No Administrative Remedies are required to exhaust. See Exhibit "A"

    _____

    _____

    _____

    _____

    _____

    _____

    _____

  b. Did you seek the highest level of administrative review available? ☐ Yes. ☐ No.
    *Attach documents that show you have exhausted your administrative remedies.*



'her than direct appeal, have you filed any other petitions, applications, or motions with respect to this conviction, commitment, or issue in any court?    ☐ Yes. If yes, continue with number 13.    ☒ No. If no, skip to number 15.

13. a. (1) Name of court: _____

    (2) Nature of proceeding (for example, "habeas corpus petition"): _____

    (3) Issues raised: (a) _____

        (b) _____

    (4) Result (Attach order or explain why unavailable): _____

    (5) Date of decision: _____

  b. (1) Name of court: _____

    (2) Nature of proceeding: _____

    (3) Issues raised: (a) _____

        (b) _____

    (4) Result (Attach order or explain why unavailable): _____

    (5) Date of decision: _____

  c. For additional prior petitions, applications, or motions, provide the same information on a separate page.

14. If any of the courts listed in number 13 held a hearing, state name of court, date of hearing, nature of hearing, and result:

_____

_____

15. Explain any delay in the discovery of the claimed grounds for relief and in raising the claims in this petition. (See In re Swain (1949) 34 Cal.2d 300, 304.)

_____

_____

16. Are you presently represented by counsel?    ☐ Yes.    ☒ No. If yes, state the attorney's name and address, if known:

_____

_____

17. Do you have any petition, appeal, or other matter pending in any court?    ☐ Yes.    ☒ No. If yes, explain:

_____

_____

18. If this petition might lawfully have been made to a lower court, state the circumstances justifying an application to this court:

  This is the appropriate court to raise my claims. See in re Sena 115 Cal. Rptr.2d 22,

94 Cal. App. 4th 836 (Cal. App. 2 Dist. 2001).

I, the undersigned, say: I am the petitioner in this action. I declare under penalty of perjury under the laws of the State of California that the foregoing allegations and statements are true and correct, except as to matters that are stated on my information and belief, and as to those matters, I believe them to be true.

Date:  March 9, 2006

▷ _(signature)_

(SIGNATURE OF PETITIONER)

# TABLE OF CONTENTS

Page

## GROUND ONE

UNDER FOUR DIFFERENT APPROACHES PETITIONER POSSESS PROTECTED LIBERTY       2
INTEREST IN PAROLE SUITABILITY DECISIONS PROTECTED BY THE DUE PROCESS
CLAUSE TO THE UNITED STATES CONSTITUTION AND HE FURTHER POSSESS PROTECTION
FROM THE DUE PROCESS CLAUSE ON ITS OWN FORCE.

## GROUND TWO

UNDER THE DUE PROCESS CLAUSE TO THE CALIFORNIA AND UNITED STATES CONSTITUTIONS    7
PETITIONER HAS THE RIGHT TO BE CONSIDERED FOR RELEASE ON PAROLE UNDER THE LAW
THAT WAS IN EFFECT AT THE TIME HE COMMITTED THE OFFENSE AND THIS COURT SHALL
REVIEW PETITIONER'S PETITION UNDER THE LAW THAT WAS IN EFFECT AT THE TIME
HE COMMITTED THE OFFENSE.

## GROUND THREE

THE BOARD OF PRISON HEARINGS  WITHOUT SUPPORTING EVIDENCE HAS FOUND PETITIONER    12
UNSUITABLE FOR A PAROLE RELEASE DATE IN VIOLATION OF THE DUE PROCESS CLAUSE
TO THE CALIFORNIA AND UNITED STATES CONSTITUTIONS FOURTEENTH AMENDMENT.

## GROUND FOUR

DUE TO THE FACT THAT PETITIONER WAS NOT CHARGED NOR CONVICTED FOR FIRST DEGREE    24
MURDER UNDER PENAL CODE SECTION 189 BUT, HE WAS CHARGED AND CONVICTED FOR SECOND
DEGREE MURDER UNDER PENAL CODE SECTION 187 NEITHER THE STATE COURTS NOR ANYBODY
WITHIN THE EXECUTIVE BRANCH OF GOVERNMENT HAVE JURISDICTION TO INCREASE HIS
PUNISHMENT OF SECOND DEGREE MURDER TO A PUNISHMENT OF FIRST DEGREE MURDER
CONVICTION.

# TABLE OF CONTENTS

PAGE

## GROUND FIVE

WHEN THE CALIFORNIA SUPREME COURT CONSTRUED PENAL CODE SECTION 3041 IT          30
MISAPPLIED IT'S OWN LAW AND CONSTRUED IT CONTRARY TO THE CLEARLY
ESTABLISHED LAW BY THE UNITED STATES SUPREME COURT AND IN VIOLATION OF
THE DUE PROCESS CLAUSE TO THE CALIFORNIA AND UNITED STATES CONSTITUTIONS.

## GROUND SIX

THE CALIFORNIA SUPREME COURT CONSTRUED PENAL CODE SECTION 3041 IN A WAY THAT     37
IT TURNED THE INDETERMINATE SENTENCE LAW INTO A VAGUE AND DISCRIMINATORY LAW
IN VIOLATION OF THE ADA AND THE DUE PROCESS CLAUSE TO THE CALIFORNIA AND
UNITED STATES CONSTITUTIONS.

Samuel Arreola  C-94761
P.O.Box 689-GW-245
Soledad, Ca. 93960


CALIFORNIA SUPERIOR COURT

FOR THE COUNTY OF FRESNO


Samuel Arreola
  Petitioner   )
         )
   v.      )  PETITION FOR WRIT OF HABEAS CORPUS
         )
         )
Anthony  Kane, Warden )
  Respondent   )


On 9-21-83 petitioner was arrested and he was charged for Second Degree Murder under Penal Code Section 187. Since then he has been in prison.

On 1984 petitioner was found guilty in a jury trial as he was charged for second degree murder and the use of a knife.

On 1984 petitioner was sentenced to 15-years to life for the second degree murder conviction plus one additional year for the use of the knife. See Exhibit "D" on page 1. On 10-29-84 petitioner started serving his life term. See Exhibit "G" on page one. The Minimum Eligible Parole Date (MEPD) of Mr. Arreola was on 2-14-93. See Exhibit "D" on page one and Exhibit "G" on page one.

On February 20, 1992 was Mr. Arreola's Initial Parole Suitability Hearing held. See Exhibit "F".

Since then a series of Parole Suitability Hearings have been held without fonding Mr. Arreola suitable for a Parole Release Date.

1

1

## GROUND ONE

2

3  UNDER FOUR DIFFERENT APPROACHES PETITIONER POSSESS PROTECTED LIBERTY INTEREST

4  IN PAROLE SUITABILITY DECISIONS PROTECTED BY THE DUE PROCESS CLAUSE TO THE

   UNITED STATES CONSTITUTION AND HE POSSESS PROTECTION FROM THE DUE PROCESS

5  CLAUSE ON ITS OWN FORCE.

6

7  First.  The California Supreme Court held that prisoners possess a protected

8  liberty interest in connection with parole decisions rendered by the Board, that

9  it would be anomalous to conclude that they possess no comparable interest when

10  such decisions are reviewed by the Governor, where such review must be based upon

11  the same factors considered by the Board.  That under California law, this liberty

12  interest underlying a Governor's parole review decisions is protected by the Due

13  process of law. In re Rosenkrantz, 29 Cal. 4th 616, 660-661, 664, 128 Cal. Rptr. 2d

14  104, 143-144, 146 (Cal. 2002).

15  In Vitek v. Jones, 445 U.S. 480, 488-489, 100 S. CT. 1254, 1261 (1980) the Court

16  held, "Once a State has granted prisoners a liberty interest, we held that due pro-

17  cess protection are necessary "to insure that the State-created right is not arbitra-

18  rily abrogated." See also Wolff v. McDonnell, 418 U.S. 539, 557. 94 S.Ct. 2963, 2975,

19  41 L. Ed.2d 935 (1974); Meachum v. Fano, 427 U.S. 215, 226, 96 S. Ct. 2532, 2539

20  (1976); Dent v. West Virginia, 129 U.S. 114, 123, 9 S. CT. 231, 233, 32 L. Ed. 623

21  (1889).

22  Therefore, under this approach petitioner possess a protected liberty interest

23  conferred to him by the State of California on parole suitability decisions and it

24  is protected by the Due Process Clause to the United States Constitution.

25

26

27

28

2

1    Second.  Petitioner possess protected liberty interest based on the nature of the

2    interest he has been deprived.

3    In Sandin v. Conner, 515 U.S. 472, 480-484, 115 S. Ct. 2293, 2299-2300, fn. 5,

4    132 L. Ed.2d 418 (1995) the Court held that the protected liberty interest inquiry

5    shall not be focused on the language of the regulation but on the nature of the

6    deprivation. See also Board of Regents of State Colleges v. Roth, 408 U. S. 564,

7    570-571, 92 S. CT. 2701, 2705-2706 (1972); Meachum v. Fano, supra, 427 U.S. 215, 224,

8    96 S. CT. 2532, 2538.

9    In Hewitt v.Helms 459 U.S. 460, 470, 103 S. Ct. 864, 870 (1983) the Court found

10    protected liberty interest in an administrative segregation issue even when the Court

11    held that, "The deprivations imposed in the course of the daily operations of an

12    institution are likely to be minor when compared to the release from custody at

13    issue in parole decisions and good time credits."

14    In Board od Regents of State Colleges v. Roth, supra, 408 U.S. at 571, 92 S. CT.

15    at 2706 the Court held that, "Liberty" and "Property" are broad and majestic terms.

16    that they are among the "[g]reat [constitutional] concepts.

17    Therefore, on the nature of the deprivation to be released from custody in parole

18    decisions petitioner possess protected liberty interest.

19    In Sandin v. Conner, supra, 515 U.S. at 480-484, 115 S. CT. at 2299-2300, fn. 5

20    the Court overruled Hewitt v. Helms, supra, 459 U.S. 460, 103 S. CT. 864 on the

21    ground that protected liberty interest inquiry shall not be focused on the language

22    of the regulation.

23    Contrary to the clearly established law a United States District Court in Sass v.

24    Cal. Bd. of Prison Terms, 376 F. Supp.2d 975 (E.D. Cal. 2005) held that we (prisoners)

25    don't have protected liberty interest on parole suitability decisions protected by

26    the Due Process Clause to the United States constitution.

27

28

3

1  In Sass the Court contrary to the claerly established law by the United States

2  Supreme Court focused on the mandatory language of the statute rather than on the

3  nature of the deprivation.

4  But lets assume for purpose of argument that the inquiry shall be focused on the

5  mandatory language of the statute, the decision in Sass is still contrary to the

6  United States Supreme Court's clearly established law.

7  The inquiry on the language of the statute not only shall be focused on the manda-

8  tory language, but also on the conditions imposed to the inmates. See Board of

9  Pardons v. Allen (1987) 482 U.S. 369, 372–373, 376–377, 107 S. Ct. 2415, 2417–2418,

10  2420, fn. 9; Grenholtz v. Inmates of Nebraska Penal & Corr., 442 U.S. 1, 12, 99

11  S. Ct. 2100, 2106 (1979).

12  In California an inmate is not entitle to be released on parole unless he meet the

13  special conditions of parole. In re Rosenkrantz, 29 Cal. 4th 616, 656, 128 Cal. Rptr.

14  2d 104, 139; Title 15 of CCR § 2401, 2402, 2403.

15  In Sass the Court didn't consider the mandatory language of the regulations, it

16  didn't consider the conditions an inmate must meet before he be released on parole.

17  The Court only focused on the mandatory language of Penal Code § 3041. Therefore,

18  the decision of the Sass Court either under the rule of the nature of the depriva-

19  tion or under the rule of the mandatory language is unreasonable and contrary to the

20  clearly established law of the United States Supreme Court.

21  The Court only needs to read Board of Pardons v. Allen, supra, 482 U.S. 369; and

22  Greenhltz v. Inmates of Nebraska Pen. & Corr. , supra, 442 U.S. 1 and compare the

23  statutes of Montana and Nebraska with     the statute of California to conclude that

24  petitioner possess protected liberty interest because the statutes in the three

25  states are indistiguishable.

26  In Greenholtz and Board of Pardons v. Allen the Court made its own independent

27  interpretation of the State Statutes.

28

4

1    Therefore, the law requires the Federal Courts to make their own interpretation

2    of Penal Code 3041 independent from the interpretation of the State Court. Williams

3    v. Taylor, 529 U.S. 362, 378–379, 384, 389, 402, 411, 120 S. Ct. 1495, 1505, 1508,

4    1511, 1517, 1522 (2000).

5    Petitioner submit to this Court that he possess protected liberty interest in

6    Parole Suitability Decisions protected by the Due Process Clause to the United

7    States Constitution.

8

9    **Third.**  When the State misapplied its own law it creates a protected liberty

10   interest reviewable in habeas corpus petition. Hicks v. Oklahoma (1980) 447 U.S.

11   343, 346, 100 S. Ct. 2227, 2229, 65 L. Ed.2d 175; Ballard v. Estelle, 937 F.2d

12   453, 546 (9th Cir. 1991).

13   For the reasons stated in the grounds of this petition the State of California

14   has misapplied its own law. It misapplied its own law when it construed Penal

15   Code 3041 and it has misapplies its own law on parole suitability decisions.

16

17   **Four.**  Petitioner possess protected liberty interest because he has been punished

18   in excess of the time authorized by the statutory law for the crime he was convicted.

19   Hicks v. Oklahoma, supra, 447 U.S. 343, 346, 100 S. Ct. at 2229; Whalen v. United

20   States, 445 U.S. 684, 63 L.Ed.2d 715, 100 S. Ct. 1432, fn. 4 (1980).

21   The United States Supreme Court requires lines between the sentences when the

22   crime is divided into degrees. Solem v. Helm, 77 L.Ed.2d 637, 652–653 (1983).

23   In California the lines are the Matrices to set the base term. Title 15 of

24   CCR 2403 (b) and (c).

25   Petitioner has served a term in excess of the Maximum term required by the

26   Matrix for the Base Term of Second Degree Murder convictions. See CCR 2403 (c).

27

28

5

1   The law require some evidence to be on the record to support the decision. See

2   Superintendent Mass. Corr. Institution v. Hill, 472 U.S. 445, 454-457, 105 S. Ct.

3   2768, 2773-2775 (1985); In re Rosenkrantz, supra, 29 Cal. 4th 616, 656-657,

4   128 Cal. Rptr.2d 104, 139-140.

5   The record is void of the some evidence required to denied petitioner his release

6   from custody and therefore he has been retained in prison in excess of the time

7   required by the Matrix for the base term for second degree murder convictions.

8   Due to the fact that petitioner has been punished in excess of the time authorized

9   by the statutory law, he possess protection from the due process clause on its own

10  force. Sandin v. Conner, supra, 515 U.S. 472, 115 S. Ct. 2293, 2295; Wolff v.

11  McDonell, supra, 418 U.S. 539, 555-556, 94 S. Ct. 2963, 2974-2975.

12

13  Therefore, petitioner submit to this Court that he possess protected liberty

14  interest in Parole Suitability Decisions and protection onits own force from  the

15  Due Process Clause to the United States Constitution because he has served a period

16  of time in excess of the time required by the Statutes and Regulations of the State

17  of California for the crime he committed.

18

19

20

21  Because petitioner possess protected liberty interest in parole suitability

22  decisions under the California and United States Constitutions his claims are

23  reviewable under both constitutions.

24

25

26

27

28

# GROUND TWO

UNDER THE DUE PROCESS CLAUSE TO THE CALIFORNIA AND UNITED STATES CONSTITUTIONS PETITIONER HAS THE RIGHT TO BE CONSIDERED FOR RELEASE ON PAROLE UNDER THE LAW THAT WAS IN EFFECT AT THE TIME HE COMMITTED THE OFFENSE AND THIS COURT SHALL REVIEW PETITIONER'S PETITION UNDER THE LAW THAT WAS IN EFFECT AT THE TIME HE COMMITTED THE OFFENSE.

"When issues of both retroactivity and application of constitutional doctrine are raised the retroactivity issue should be decided first." Teague v. Lane, (1989) 489 U.S. 288, 300, 109 S. Ct. 1061, 1070.

Petitioner has standing to challenge the unconstitutionality of Penal Code 3041 due to the way it was construed by the California Supreme Court in In re Dannenberg, 34 Cal. 4th 1061, 23 Cal. Rptr.3d 417 (Cal. 2005). (Dannenberg).

"Retroactivity is properly treated as a threshold question, for, once a new rule is applied to the defendant in the case announcing the rule, evenhanded justice requires that it be applied retroactively to all who are similarly situated." Teague v. Lane, supra, 489 U.S. 288, 300, 109 S. Ct. 1061, 1070.

Some Courts have relied in In re Dannenberg, supra, 34 Cal. 4th 1061 to denied the petitions of fellow inmates on parole decisions issues. See In re DeLuna (2005) 24 Cal. Rptr.3d 643, 649; Sass v. Cal. Bd. of Prison Terms, 376 F. Supp.2d 975, 981-983 (E.D. Cal. 2005). Therfore, it is assumed this Court is going to rely in Dannenberg to deny petitioner the relief he is seeking.

However, because in Dannenberg the California Supreme Court changed the Indeterminate Sentence Law (ISL) it cannot be applied retroactively without violating the Retroactive Law. See Bouie v. City of Columbia, 378 U.S. 347, 84 S. CT. 1697 (1964); and Rogers v. Tennessee, 532 U.S. 451, 121 S. CT. 1693 (2001).

Relying in Dannenberg to deny petitioner the relief he seeks is contrary to the clearly established law by the United States Supreme Court in that is has required the Courts to consider the petitions under the law that was in effect at the time the petitioner committed the offense. See Teague v. Lane, supra, 489 U.S. 288, 305-308, 109 S. CT. 1061, 1073-1074.

1    In In re Danneberg, supra, 34 Cal. 4th 1061, 23 Cal. Rptr.3d 417, 440, 443, 104

2    P.3d 783 the California Supreme Court determined that the Board is not required to

3    refer to its sentencing matrices or to compare other crimes of the same type in

4    deciding whether a prisoner is suitable for a parole and whether the prisoner's

5    crime was "especially cruel" or "exceptionally callous." Rather, the Board may

6    characterize a murder as "particularly egregious'" if there is violence or

7    viciousness beyond what is "minimally necessary" for conviction. See also in In re

8    DeLuna, supra, 24 Cal. Rptr.3d 643, 649.

9    The above holding changed the law that was in effect at the time petitioner

10   committed the offense.

11   At the time petitioner committed the offense the Board was required to refer to

12   its sentencing matrices to find the inmate suitable for a parole release date. In

13   re Stanworth, 33 Cal.3d 176, 181–186, 187 Cal. Rptr. 783, 786–788 (Cal. 1982); In

14   re Seabock, 140 Cal. App.3d 29, 40, 189 Cal. Rptr. 310, 317, fn. 9 (1983); In re

15   Ramirez, 114 Cal. Rptr.2d 381, 397 (Cal. App. 1 Dist. 2001).

16   The decisions of the California Court of Appeals is the authority in the absence

17   of the California Supreme Court decision on the issue. Kolander v. Lawson, 461 U. S.

18   352, 103 S. Ct. 1855, fn. 6 (1983). Therefore, previous to the time the California

19   Supreme Court had construed Penal Code Section 3041 in Dannenberg, the decisions

20   of the California Court of Appeals could be the authority in parole decisions.

21   Under Stanworth it is required the Board to consider all the factors to find the

22   prisoner suitable for a parole release date and to set the base term according to

23   the time prescribed in the matrices and that only when the inmate was convicted of

24   first  degree murder and for a specific category of extremely serious offense the

25   Board could set the base term beyond the term authorized by the matrices. See also

26   In re Rosenkrantz, 29 Cal. 4th 616, 653–655, 682–684, 128 Cal. Rptr.2d 104, 137–138,

27   161–162 (Cal. 2002).

28

1    At the time petitioner committed the offense Penal Code Subsection 3041 (a)

2    required and it is still requiring that the Board to compare other crimes of the

3    same type in deciding whether a prisoner is suitable for release on parole. See

4    also In re Seabock, supra, 140 Cal. App.3d 29, 189 Cal. Rptr. 310, fn. 7.

5    The comparison of other crimes of the same type in deciding whether a prisoner

6    is suitable for release on parole was overruled by the California Supreme Court.

.7    See In re Dannenberg, supra, 23 Cal. Rptr. 3d 417, at 443. and fn. 18.

8

9    At the time petitioner committed the offense Penal Code Subsection 3041 (a)

10    required and it is still requiring that one year previous to the inmate's Minimum

11    Eligible Parole Release Date the Board shall meet with the inmate and shall

12    normally set his parole release date.

13    Even when Penal Code Subsection 3041 (a) didn't violate any constitution the

14    California Supreme Court in In re Dannenberg, supra, 23 Cal. Rptr.3d 417, at 433-

15    434 overruled the requirement that the Board "shall normally set the prisoner's

16    release date at the initial parole suitability hearing."  It held that the Board

17    can denied to every prisoner our release date and obviously our release on parole

18    without considering Penal Code Subsection 3041 (a).

19    At the time petitioner committed the offense the Board could denied to prisoners

20    our release date only if the prisoner had committed the offense in an "especially

21    heinous, atrocious" or "cruel" manner. See Title 15 of CCR Sec. 2402 (c)(1) and

22.    in In re Seabock, supra, 140 Cal. App.3d at 39, 189 Cal. Rptr. 310, 316, fn. 8.

23    In Dannenberg, the requirement that the Board nust find the crime was committed

24    in an especially heinous, atrocious or in a cruel manner was changed by the Court

25    and it held that the Board may characterize a murder as "'particularly egregoius'

26    if there is violence or viciousness beyond what is "minimum necessary" for a

27    conviction. In re Dannenberg, supra, 23 Cal. Rptr.3d 417, 440, 443; In re DeLuna,

28    supra, 24 Cal. Rptr.3d 643, 649.

1    No matter what are the circumstances of the commitment offense the Board in every

2    case finds evidence beyond the minimum necassary to establish the elements for

3    second degree murder and the Board is using that evidence to denied to every priso-

4    ner our release on parole for the rest of our natural life as the California Supreme

5    Court in Dannenberg directed the Board to do.

6    Therefore, in In re Dannenberg, supra, 34 Cal. 4th 1061 the California Supreme

7    Court changed the ISL in that the Board needs not longer consider all the factors

8    it used to consider to find the inmates suitable for a parole release date it only

9    needs to consider the commitment offense factor to deny the inmate's release from

10    custody; the Board no longer needs to consider Penal Code Sub. 3041 (a) and it only

11    needs to find minimum evidence in the commitment offense beyond the minimum evidence

12    necessary to establish the elements for second degree murder to increase the punish-

13    ment to a greater offense and deny to every prisoner our release from custody based

14    on the static commitment offense circumstance only and for the rest of our natural

15    life.

16    The California Supreme Court's holding in In re Dannenberg is clearly an effort

17    of the Court to increase the punishment of second degree murder convictions to the

18    punishment of First Degree Murder convictions and the Court expressed its desire

19    to increase the punishment by directing the Board to increase the crimes of Second

20    Degree Murder to the crimes of first degree murder. See In re Danneberg, supra,

21    23 Cal. Rptr.3d 417, fn. 16.

22    THE WAY THE CALIFORNIA SUPREME COURT CONSTRUED PENAL CODE SECTION 3041 CANNOT
23    BE APPLIED TO PETITIONER AND THE PRISONER SIMILARLY SITUATED WITHOUT VIOLATING
      THE RETROACTIVE DOCTRINE.
24

25    In violation of the Retroactive Doctrine and contrary to the clearly established

26    law by the United States Supreme Court in Bouie v. City of Columbia, 378 U.S. 347,

27    84 S. Ct. 1697 (1964); and Rogers v. Tennesse, 532 U.S. 451, 121 S. Ct. 1693 (2001)

28    the courts have relied on the unreasonable construction of Penal Code Section 3041

1  in In re Dannenberg to denied the fellow inmates the relief they have sought.

2  And since once a new rule is applied to the defendant in the case announcing the

3  rule, evenhanded justice requires that it be applied retroactively to all who are

4  similarly situated, it applied to petitioner because petitioner are similarly

5  situated to Dannenberg. However, the application of the Dannenberg decision to

6  petitioner violates the retroactive doctrine and it is contrary to the clearly

7  established law by the United States Supreme Court.

8    In Bason v. Kentuckey, 476 U.S. 79, 106 S. Ct. 1712, 90 L.Ed.2d 69 (1986) the

9  Court modified a portion of Swaim v. Alabama, 380 U.S. 202, 85 S. Ct. 824, 13 L.Ed.2d

10  759 (1965) and the portion that was modified could not be applied retroactively on

11  collateral review of convictions that became final before, Batson was announced.

12  See Teague v. Lane, supra, 489 U.S. 288, 294-295, 109 S. Ct. 1061, 1065-1067.

13

14    In Teague v. Lane, supra, 489 U.S. at 305-307, 109 S. Ct. at 1073 the Court made

15  it clear that habeas corpus petitions shall be adjudicated by applying the law that

16  was in effect at the time the prisoner was convicted.

17

18    For the foregoing reasons petitioner's petition shall be adjudicated by

19  applying the law that was in effect at the time he committed the offense rather

20  than adjudicating it under the Dannenberg holding and petitioner request his

21  petition be adjudicated by applying the law that was in effect when he committed

22  the offense and was convicted.

23

24

25

26

27

28

1                              **GROUND THREE**

2

3    THE BOARD OF PRISON TERMS WITHOUT SUPPORTING EVIDENCE HAS FOUND PETITIONER

4    UNSUITABLE FOR A PAROLE RELEASE DATE IN VIOLATION OF THE DUE PROCESS CLAUSE

     TO THE CALIFORNIA AND UNITED STATES CONSTITUTIONS FOURTEENTH AMENDMENT.

5

6        Some evidence in the record is required in order to support the Board's findings

7    of unsuitability. Superintendent Mass. Corr. Institution v. Hill, 472 U.S. 445,

8    454–457, 105 S. Ct. 2768, 2773–2775 (1985); In re Rosenkrantz, 29 Cal. 4th 616,

9    656–657, 128 Cal. Rptr.2d 104, 139–140 (Cal. 2002).

10       In Title 15 of California Code of Regulations (CCR) Section 2402 are the

11   circumstances the Board shall consider to find prisoners unsuitable or suitable for

12   a parole release date.

13       In Title 15 of CCR (c) are the circumstances tending to show unsuitability.

14   CCR 2402 (c)(1) COMMITMENT OFFENSE. "The prisoner committed the offense in an

15   especially heinous, atrocious or cruel manner."

16       For the last 14-years the Board has found that petitioner is not suitable for

17   parole and would pose an unreasonable risk of danger to society or a threat to

18   public safety if released from prison.  In support of its findings the Board has

19   stated, "The offense in itself was a very cruel and a very callous crime. It was

20   carried out in a rather calculated manner in that there was no need for this crime

21   to have occurred. And the victim was stabbed to death during the offense.  And the

22   offense was carried out in a manner that showed a callous disregard for human suffe-

23   ring.  The motive for the crime was extremely trivial in relation to the offense

24   in that there had been an altercation and the victim — the prisoner had been  hit

25   in the eye, but then things clamed down and so there was plenty of opportunity for

26   the victim — the prisoner to get away from the victim.  This crime occurred on

27   August 31st of 1983 at farm labor camp and work had been down for couple of days

28   and everyone   had been drinking beer.

1   And there was a fight between the victim and the prisoner and others, apparently,

2   who were at the camp.  And then the prisoner started drinking beer with frineds

3   who appear to have goaded him into continuing a fight with Hernandez.  The prisoner

4   armed himself with a 14 inch kitchen knife from the camp kitchen and his friend

5   armed himself with a smaller knife and then they confronted Hernandez.  The victim

6   was stabbed to death by the prisoner."   See Exhibit "G" on pages 38-39.

7

8    The Evidence does not support the findings of the Board that Mr. Arreola would

9   pose an unreasonable risk of danger to society or a threat to public safety if

10  released from prison.

11   A Report prepared by Correctional Counselor P. McPartlan on July 2002 he wrote that

12  considering the commitment offense, the lack of criminal record previous to the

13  commitment offense and after it he would speculate that petitioner would pose a

14  moderate to minimum degree of threat to the community if released on parole at that

15  time.  Several Correctional Officials agree with this assessment. See Exhibit "D"

16  on pages 11-12.

17   On 2004 Correctional Counselor P. McPartlan wrote that petitioner would pose a

18  moderate to minimum degree of risk to the community if released on parole at that

19  time.  Several Correctional Officials agree with Counselor McPartlan's assessment of

20  petitioner's level of dangerousness to the community. See Exhibit "D" on pages 3, 7.

21   On 4-29-02 Staff Psychologist E.W. Hewchuk Ph. D. wrote that Mr. Arreola's violence

22  potential within a controlled institutional setting is significantly below average

23  relative to the inmate population.  That the conclusion is based on the fact that,

24  prior to the instant offense, that there is no juvenile or adult criminal history.

25  That inmate Arreola has remained relatively discipline-free throughout the duration

26  of his incarceration, and has participated and cooperated in all group activities.

27  See Exhibit "E" on page 4.

28

13

1    On January 25, 1996 Staff Psychologist L.W. Berning, Ph. D. wrote that Mr.

2   Arreola's level of dangerousness appeared to be below that of average inmate

3   convicted for similar crime. See Exhibit "E" on page 7.

4    Because neither previous to the commitment offense nor after it Mr. Arreola has

5   committed any offense and because he was 50-years old when he committed the current

6   offense and now he is a 72-years old man no evidence support that he would pose an

7   unreasonable risk of danger to society because he has not the disposition to cimmit

8   crimes. Since he was a child he has been a hardworker person. See Exhibit "D" on

9   pages 10-11, 13; Exhibit "E" on pages 1, 9.

10    Therefore, the fact that while intoxicated Mr. Arreola has committed a crime in his

11   entire life is not evidence to support the findings of the Board that he would pose

12   an unreasonable risk of danger to society if released from prison. CCR 2401 (a).

13

14    Under CCR 2402 (c)(1) the Board has found that the offense in itself was very

15   **cruel** and a **very callous crime.** See Exhibit "G" on page 38.

16   Cruel is defined as disposed to give pain to others; willing or pleased to hurt or

17   aflict; savage, inhuman. merciless." People v. Superior Court of Santa Clara County,

18   31 Cal.3d 797, 802, 183 Cal. Rptr. 800, 802 (Cal. 1982); People v. Aguilar, 58 Cal.

19   App. 4th 1196, 1201, 68 Cal. Rptr.2d 619, 621-622 (Cal. App. 1 Dist 1997).

20   Cruel means designed to inflict a high degree of pain with utter indiffering, or

21   even enjoyment of the suffering of others. Allen v, Superior Court of Kern County,

22   113 Cal. App.3d 42, 52, 169 Cal. Rptr. 608, 614 (Cal. App. 5 Dist 1981); Spinker-

23   llink v. Wainwright, 578 F.2d 582, 611 (5th Cir. 1978).

24   "What is intended to be included are those capital crimes where the actual

25   commission of the capital felony was accompanied by such additional acts as to

26   set the crime apart from the norm of capital felonies—the conscienceless or

pitiless crime which is unecessarily torturous to the victim." Spinkellink v.

27   Wainwright, supra, 578 F.2d 582, 611.

28

1  Penal Code Subsection 190.2 (a)(14) hold that:  "The murder was especially

2  heinous, atrocious, or cruel, manifesting exceptional deprivity. As used in

3  this section, the phrase "especially heinous, atrocious, or cruel manifesting
   exceptional deprivity" means a consciousless or pitiless crime that is

4  unnecessarily torturous to the victim."

5  What the State and Federal Law show is that a murder committed in a cruel manner

6  is a torturous murder.  The Board has not referred to any piece of evidence to show

7  petitioner committed the murder in a torturous manner.  Therefore, the findings of

8  the Board that petitioner committed the murder in a cruel manner is not supported

9  by any evidence.

10  The United States Supreme Court construed the word "torture" with in pari materia

11  with 'aggravated battery" so as to require evidence of serious physical abuse of the

12  victim before death. Godfrey v. Georgia, 446 U.S. 420, 421, 100 S. Ct. 1759, 1761

13  (1980).

14  In Petitioner's offense there is absolutely no shred of evidence to support the

15  findings of the Board that petitioner committed the offense in a cruel manner which

16  means he committed the murder by torture.

17  Petitioner committed the crime by stabbing the victim in the stomach. See Exhibit

18  "G" on page 12.

19  No record show the victim died as a result of petitioner's stabbing. The record

20  has evidence that another man had cut the victim's neck. This was after Mr. Arreola

21  had stabbed the victim. See Exhibit "D" on pages 8-9.

22  A muder committed by torture is a first degree murder. See Penal Code 189.

23  Mr. Arreola was no charged with first degree murder under Penal Code Section 189.

24  He only was charged with Second degree murder under Penal Code Section 187.

25  Non of the elements of first degree murder were on the information. Therefore,

26  since Mr. Arreola was arrested no evidence has been presented to support that he

27  committed the crime in a cruel manner which means he committed the crime by torture.

28

1   BUT EVEN IF THERE WOULD BE SOME EVIDENCE TO SUPPORT THE FACTOR THAT PETITIONER

2   COMMITTED THE OFFENSE IN A CRUEL MANNER AFTER CONSIDERING IT FOR THE LAST 11

    YEARS HAS BEEN IN VIOLATION OF PETITIONER'S DUE PROCESS RIGHTS TO THE

3   CALIFORNIA AND UNITED STATES CONSTITUTIONS.

4     On February 20, 1992 was petitioner's Initial Parole Suitability Hearing held.

5   See Exhibit "F".

6     Since the Initial Parole Suitability Hearing was held the Board has considered the

7   Cruel Factor to denied petitioner's release on parole. See Exhibit "F" on page 5.

8   By considering the same static factor for the last 14-years to denied petitioner's

9   release on parole violates the Due Process Clause to the California and United States

10  Constitutions. See Biggs v. Terhune, 334 F.3d 910, 917 (9th Cir. 2003); In re Rosen-

11  Krantz, 29 Cal. 4th 616, 683-684, 128 Cal. Rptr.2d 104, 161-162 (Cal. 2002). Although,

12  Biggs v. Terhune, supra, 334 F.3d 910 is a United States Court of Appeals decision

13  the decision of the Court of Appeals is the authority in the absence of the United

14  States Supreme Court decision on the issue. Kolander v. Lawson, 461 U.S. 352, 103

15  S. Ct. 1855, fn. 6 (1983).

16    Because in In re Rosenkrantz, supra, 29 Cal. 4th 616 the Court held that the release

17  on parole cannot be denied on a static factor after certain time without violating

18  the due process clause this holding is enforceable by the Due Process Claue to the

19  United States Constitution and the United States Supreme Court clearly established

20  law in that the Court has held that "Once a State has granted prisoners a liberty

21  interest, due process protection is necessary "to insure that the stae-created right

22  is not arbitrarily abrogated." Vitek v. Jones, 45 U.S. 480, 488-489, 100 S. Ct. 1254,

23  1261; Wolff v. McDonnell, 418 U.S. 539, 557, 94 S. Ct. 2963, 2975, 41 L.Ed.2d 935;

24  Meachum v. Fano, 427 U.S. 215, 226, 96 S. Ct. 2539 (1976).

25    Therefore, the cruel factor cannot longer be considered by the Board to denied

26  petitioner's release on parole and the consideration of it has been in violation of

27  the Due Process Clause to the California and United States Constitutions.

28

16

1   As stated above the Board has found that the offense was carried out ina callous

2   manner. See Exhibit "G" on page 38.

3   Callous means feeling no emotion, feeling no sympathy for others. Merriam Webster's

4   Callegiate Dictionary. Tenth Edition.

5   The evidence does not support petitioner committed the offense without emotion.

6   The evodence shows two different versions. The version of the prosecution's witness,

7   Onorio Montes Rubio and the version of petitioner but on either case it was an

8   emotional offense.

9   Apparently at trial only the prosecution's evidence against petitioner was presen-

10  ted to the jury.

11  Mr. Arreola has claimed his trial attorney didn't let him testify at his trial.

12  See Exhibit "E" on page 10.

13  Mr. Arreola has claimed that the victim did hit him on the head with a rock. See

14  Exhibit "E" on page 9.

15  He also has contended that there wer 8 men with grape knives that had surrounded

16  him trying to kill him. That the foreman had came to calm down the men and that

17  four followed the foreman, but the other four stayed with the intention to hurt

18  Mr. Arreola. That he went to the kitchen to retrieve a knife and that the four men

19  followed him that when he confronted them with the itchen knife it was when he

20  stabbed the victim. See Exhibit "G" on pages 12-14, 33.

21  Neither side has said it was a confrontation between two groups of men but from

22  the evidence it can be assumed that it was a confrontation between two groups of

23  intoxicated men and that it was a conmotion. The victim had hit petitioner on his

24  head with a rock and he repeatedly had punched petitioner on the face. See Exhibit

25  "D" page 1 and Exhibit "E" on page 9.

26  Therefore, the evidence does not support that Mr. Arreola stabbed the victim

27  without emotion and that he didn't commit the offense in a callous manner.

28



1    The Board has considered the callous factor for the last 14 years and the conside-

2    ration of it for such a long period of time violates the Due Proces Clause to the

3    California and United States Constitutions. Biggs v. Terhune, 334 F.3d at 917;

4    In re Rosenkrantz, supra, 29 Cal. 4th at 683-684, 128 Cal. Rptr.2d at 161-162.

5

6    CCR 2402 (2)(1)(B) "The offense was carried out in a dispassionate and calculated

7    manner, such as an execution-style murder."

8    The Board has found that the offense was carried out in a rather calculated

9    manner. See Exhibit "G" on page 38.

10    Calculated means planned. In re Rosenkrantz, 80 Cal. App. 4th 409, 95 Cal. Rptr.

11    2d 279, fn. 13 (2000).

12    A planned murder is a firat degree murder. People v. Proctor 4 Cal. 4th 499, 529,

13    15 Cal. Rptr.2d 340, 355 (Cal. 1992); People v. Ceja, 4 Cal. 4th 1134, 1140, 17 Cal.

14    Rptr.2d 375, 379 (Cal. 1993).

15    The evidence does not support petitioner committed a first degree murder offense.

16    He was not charged with first degree murder under Penal Code Section 189 and he was

17    not convicted of first degree murder.

18    Petitioner was only charged with second degree murder under Penal Code Section 187

19    and the jury convicted him of second degree murder. Therefore, the Board has not

20    evidence to support petitioner committed a calculated murder and therefore, it

21    capriciously and arbitrarily has denied petitioner his release from prison. But,

22    if there would be some evidence to support that petitioner committed the offense

23    in a calculated manner after being considering it for the last 14-years violates

24    the Due Process Clause to the California and United States Constitutions. Biggs v.

25    Terhune, supra, 334 F.3d at 917; In re Rosenkrantz, supra, 29 Cal. 4th at 683-684,

26    128 Cal. Rptr. 2d at 161-162.

27    The no changing factor cannot be considered to increase petitioner's punishment

28    of second degree murder to life without the possibility of parole.

1    CCR 2402 (c)(1)(D). Under this subsection the Board has found that the offense

2    was carried out in a manner that showed a callous disregard for human suffering.

3    See Exhibit "G" on page 38.

4    This language refers to something akin to torture or that the victim suffered

5    much more than that which would be inherent in any killing. In re Rosenkrantz, supra,

6    95 Cal. Rptr.2d 279, at 287, 80 Cal. App. 4th 409, 419, fn. 13.

7    This is not a murder committed by torture and the record is void of evidence and

8    the Board has not referred to any evidence which show that the victim suffered much

9    more than any other victim in a second degree murder killing.

10    Therefore, the some evidence required to support the findings of the Board that

11    the crime was carried out in a manner that showed a callous disregard for human

12    suffering is not existent.

13    The Board has been considering this factor for the last 14-years. See Exhibit "F"

14    on page 5.

15    By considering this static factor for the last 14-years to deny petitioner his re-

16    lease from prison violates the Due Process Clause to the California and United

17    States Constitutions. Biggs v. Terhune, supra, 334 F.3d at 917; In re Rosenkrantz,

18    supra, 29 Cal. 4th at 683-684, 128 Cal. Rptr.2d at 161-162.

19

20    CCR 2402 (c)(1)(E). Under this subsection the Board has found that the motive for

21    the crime was extremely trivial in relation to the offense. See Exhibit "G" page 38.

22    In In re Scott, 119 Cal. App. 4th 871, 893, 15 Cal. Rptr.3d 32, 41 (2004) the Court

23    defined "Motive that is very trivial in relation to the offense" as follows:

24    "The reference in Board regulations to motives that are "very trivial in rela-

25    tionship to the offense" therefore, requires comparisons: to fit the regulatory

      description, the motive must be materially less significant (or more "trivial")

26    than those which conventionally drive people to commit the offense in question,

27    and therefore, more indicative of risk of danger to society if the prisoner is

28    released than is ordinarily presented."

1    The Board has not explained why the motive for the offense was more trivial

2    than those which conventionally drive people to commit the offense in second degree

3    murder convictions.

4    The evidence does not support petitioner committed the offense with a trivial

5    motive much less with extremely trivial motive in relation to the offense.

6    Petitioner has maintained he stabbed the victim in self defense. See Exhibit "G"

7    on pages 12-14.

8    As stated above there are two different versions the version of the prosecution's

9    witness and the version of petitioner.

10    The version of petitioner is believable for the following reasons:  Mr. Arreola

11    has not the disposition to commit crimes. The current crime was the only crime he

12    has committed in his entire life. Since he was a child he has been a hardworker and

13    he was 50 years old when he committed the current offense. After the commitment of

14    the current offense he has not committed any crime and he has continued to be a

15    hardworker. See Exhibit "G" on pages 14-21.

16    Therefore, the characteristics of Mr. Arreola are not the characteristics of a

17    person who would commit a murder with a trivial motive.  Mr. Arreola has maintained

18    the victim and three more guys followed him trying to kill him and that he retrieved

19    the kitchen knife to defend himself. See Exhibit "G" on page 16.

20    The evidence clearly shows Mr. Arreola is not the kind of person who would

21    commit a murder without any motive.  He no even is the kind of person who would

22    commit minor crimes much less he would commit a murder with a trivial motive and

23    he has so stated. See Exchibit "G" on page 33.

24    For the foregoing reasons the Board has not the some evidence required to support

25    its findings that the motive for the crime was trivial in relation to the offense.

26    Besides, the Board has considered this factor for the last 14-years to denied

27    petitioner's release from custody and it has been in violation of the Due Process

28    to the California and United States Constitutions. Biggs and Rosenkrantz, supra,.

1  CCR 2402 (c)(2). PREVIOUS RECORD OF VIOLENCE.

2  Mr. Arreola has not any criminal record apart from the current offense. See Exhibit

3  "G" on page 14.

4  CCR 2402 (c)(3). N/A.

5  CCR 2402 (c)(4) N/A.

6  CCR 2402 (c)(5). Psychological Factors. "The prisoner has a lengthy history of

7  severe mental problems related to the offense."

8  Mr. Arreola has not any mental problem. See Exhibit "E" on page 5.

9

10  CCR 2402 (c) (6)  Institutional Behavior. "The prisoner has engaged in serious

11  misconduct in prison or jail."

12  Mr. Arreola has not engaged in any serious misconduct during the 22-years he has

13  been incarcerated. See Exhibit "G" on pages 20-21.

14

15  **PETITIONER MEET THE CRITERIA TO BE RELEASED ON PAROLE HOWEVER THE BPT CAPRICIOUSLY**

16  **AND ARBITRARILY HAS DENIED HIS RELEASE FROM PRISON.**

17  Under CCR 2402 (d) are listed the circumstances tending to show suitability.

18  CCR 2402 (d)(2). Stable Social History. "The prisoner has experienced reasonably

19  stable relationships with others."

20  Petitioner has maintained strong ties with his family members during his encar-

21  ceration. He has been married to the same woman for the last 55-years and they had

22  11 children. See Exhibit "G" on pages 15-16, 27-32; Exhibit "E" on page 2; and a

23  copy of a letter from his brothers who live in Mexico. See Exhibit "C" on pages 1-2.

24

25  CCR 2402 (d)(3). Signs of Remorse.

26  Mr. Arreola has expressed his remorse for the death of the victim. See Exhibit "G"

27  on page 16; Exhibit "E" on page 10.

28

1   CCR 2402 (d)(4)  Motivation for the Crime.  "The prisoner committed his crime as

2   the result of significant stress in his life, especially if the stress has built

3   over a long period of time."

4     According to the evidence Mr. Arreola committed the crime because the victim had

5   beat him, and had hit Mr. Arreola with a rock on his head, and the victim and other

6   men were threatening to kill Mr. Arreola, and according to the Board Mr. Arreola

7   was drunk and other man goaded him to fight with the victim. See Exhibit "G" on 39.

8     Therefore, during some period of time several factors contrubuted to the

9   commitment of the crime and it was an stressful situation.

10

11   CCR 2402 (d)(5).  N/A.

12   CCR 2402 (d)(6).  Lack of Criminal History.  Mr. Arreola lack any criminal History.

13   See Exhibit "G" on pages 14, 39.

14   CCR 2402 (d)(7) Age. "The prisoner's present age reduces the probability of reci-

15   divism."

16   Mr. Arreola was born on June 10, 1935. See Exhibit "D" on page 10.

17   Therefore, he is a 71 years old man. This 71-years old man has not the characte-

18   ristics of a person who would commit another crime.

19

20   CCR 2402 (d)(8). Understanding and Plans for Future.  "The prisoner has made

21   realistic plans for release or has developed marketable skills that can be put to

22   use upon release."

23   Mr. Arreola has the disability to learn. See Exhibits "E" on pages 1-2; Exhibit

24   "D" on page 4; Exhibit "G" on page 19.

25   Therefore, due to Mr. Arreola's disability to learn he has not learned but one

26   vocational. Vocational Landscape & Garden. See Exhibit "D" on page 11.

27   However, Mr. Arreola has his own house to live in upon his release from prison.

28   See pictures of his house at Exhibit "C" on page 3.

1    Mr. Arreola further has land  in a ranch to work upon his release from prison.

2    See Exhibit "G" on page 32.

3    Mr. Arreola has a large family who support him. See Exhibit "G" on pages 27-32.

4    His family want he be released from prison to take care of him. See Exhibit "C"

5    on pages 1-2.

6    Therefore, Mr. Arreola has realistic plans upon his release from prison.

7

8    CCR 2402 (d)(9). Institutional Behavior. "Institutional activities indicate an

9    enhanced ability to function within the law upon release."

10   In his entire life Mr. Arreola has been a hardworker including while he has

11   been incarcerated.

12   Mr. Arreola has been a member of Alcoholics Anonymous since 1989. He participated

13   and completed a program called "Yokefellow Program." He used to make leather wallets,

14   belts, purses and other objects. However, due to the fact that he no longer was

15   allowed to have the tools he stopped to do it. Mr. Arreola further has participated

16   in the following job/school assignments: Housing Unit Porter, Vocational Landscape &

17   Garden, Janitorial Maintenance, ESL, Culinary, Textiles, Bakery, Recreational Aide

18   and Yard Crew. Which work performance has been of exceptional ratings. See Exhibit

19   "D" on page 11.

20

21   For the foregoing reasons Mr. Arreola meets the criteria to be released from

22   prison however the Board capriciously and arbitrarily has denied his release from

23   prison in violation of the Due Process Clause to the California and United States

24   Constitutions.

25

26

27

28

23

<div align="center">GROUND FOUR</div>

3  DUE TO THE FACT THAT PETITIONER WAS NOT CHARGED NOR CONVICTED FOR FIRST DEGREE
4  MURDER UNDER PENAL CODE SECTION 189, BUT HE WAS CHARGED AND CONVICTED FOR SECOND
   DEGREE MURDER UNDER PENAL CODE SECTION 187 NEITHER THE STATE COURTS NOR ANYBODY
5  WITHIN THE EXECUTIVE BRANCH OF GOVERNMENT HAVE JURISDICTION TO INCREASE HIS
6  PUNISHMENT OF SECOND DEGREE MURDER TO A PUNISHMENT OF FIRST DEGREE MURDER CON-
7  VICTION.

8  The Law of Different Degrees of Criminal Culpability is clearly established by

9  the United States Supreme Court. Mullaney v. Wilbur, 421 U.S. 684, 697-698,

10  95 S. Ct. 1881, 1889 (1975); Solem v. Helm, 77 L.Ed.2d 637, 651 (1983); Hermelin v.

11  Michigan, 501 U.S. 957, 996, 111 S. Ct. 2680, 2702 (1991); Apprendi v. New Yersey,

12  120 S. Ct. 2348, 2360 (2000).

13  Apparently the principle of different degrees of criminal culpability is an

14  universally established principle that has been recognized since 1215 when the

15  Magna Carta was written. See Solem v. Helm, supra, 77 L.ED.2d at 645, fn. 9.

16  The State of California also recognize the principle of "different degrees of

17  Criminal Culpability." The Legislature has enacted numerous statutes with

18  different degrees of criminal culpability.

19  Relevant in this ground is Penal Code Section 189 for first degree murder.

20  Sentences are 25-years to life, life without the possibility of parole and death

21  penalty. Penal Code 187 for second degree murder. Sentence 15-years to life. See

22  Penal Code 190; People v. Robertson, 17 Cal. Rptr.3d 604, 610 (Cal. 2004); Second

23  Degree Murder and manslaughter are lesser included offenses of first degree murder.

24  People v. Stearns, 92 Cal. Rptr. 69, 14 Cal. App. 3d 178 (Cal. App. 2 Dist 1971).

25  Lesser included offense, means lesser in terms of magnitude of punishment.

26  Schmuck v. United States, 489 U.S. 705, 109 S. Ct. 1443, 103 L. Ed.2d 734 (1989);

27  Carter v. U.S. 255, 147 L.ED.2d 203, 120 S. Ct. 2159, fn. 2 (2000).

28

1    On September 21, 1983 Mr. Arreola was arrested for the current offense.

2    On 1984 he was found guilty on the second degree murder charge and he was sentenced

3    to 15-years to life for the murder conviction and one year for the use of knife.

4    See Exhibit "D" on pages 1-2.

5    Mr. Arreola started serving his 15-years to life term on 10-29-84. See Exhibit "G"

6    on page 1.

7    Therefore, Mr. Arreola has been incarcerated for the last 22 years.

8    According to the Matrix for the base term the Maximum Term for a second degree

9    murder conviction is 21 years. See CCR 2403 (c).

10    In the Matrix For The Base Term the credits petitioner has earned under CCR 2410

11    for over than two decades are not included.

12    By providing him with the credits he is entitle he has paid to society 33-years

13    for the second degree murder conviction. This is the Maximum Term for a first degree

14    murder conviction and sentence of 25-years to life. See the Matrix for the Base Term

15    of Fisrt Degree Murder convictions at CCR 2403 (b).

16    The Matrices to set the Base Tarm are commanded by Penal Code Subsection 3041 (a).

17    Therefore, the Matrix for the Base Term is a codified guideline. See In re Stanworth,

18    33 Cal. 3d 176, 181-184, 187 Cal. Rptr. 783, 786-788 (1982).

19    Because the matrices are codified guidelines they cannot be hollow guidelines they

20    mean something. Carter v. U.S. 530 U.S. 255, 262, 120 S. Ct. 2159, 2165 (2000).

21    Therefore, Mr. Arreola has been punished in excess of the time required by the

22    Statutory and Regulatory law. And the executive branch of Government for several

23    reasons has not jurisdiction to increase his punishment of second degree murder to

24    the punishment of a First Degree Murder conviction, 25 years to life term or to

25    life without the possibility of parole.

26

27

28

1                                        "A"

2        DUE TO THE FACT THAT THE DIVISION OF A CRIME INTO DEGREES IS AN EXCLUSIVE

3    LEGISLATIVE FUNCTION THE JUDICIAL AND EXECUTIVE BRANCHES OF GOVERNMENT LACKS

     JURISDICTION TO DISREGARD THE SECOND DEGREE MURDER CONVICTIONS AND INCREASE

4    THE CRIME TO THE GREATER OFFENSE OF FIRST DEGREE MURDER.

5

6        The division of a crime into degrees constitutes an exclusive Legislative fuction.

7    People v. Bright, 12 Cal. 4th 652, 669-670, 49 Cal. Rptr.2d 732, 743 (Cal. 1996).

8    In California second degree murder is a lesser included offense of first degree

9    murder. People v. Bradford, 15 Cal. 4th 1229, 1344, 65 Cal. Rptr.2d 145, 212;

10   People v. Stearns, supra, 92 Cal. Rptr. 69, 14 Cal. App. 3d 178.

11   The defendant cannot be punished for a higher degree of the crime than the degree

12   specified. People v. Mikhail, 13 Cal. App. 4th 846, 856, 16 Cal. Rptr.2d 641, 647

13   (Cal. App. 4 Dist. 1993). Hicks v. Oklahoma, 447 U.S. 343, 346, 100 S. Ct.2227,

14   2229 (1980); Whalen v. United States, 445 U.S. 684, 100 S. Ct. 1432, fn. 4 (1980).

15   It is the function of the Legislature Branch of Government to define crimes and

16   prescribe punishments. In re Lynch, 8 Cal. 3d 410, 414, 105 Cal. Rptr. 217, 219;

17   Manduley v. Superior Court, 27 Cal. 4th 537, 552, 117 Cal. Rptr.2d 168, 180 (2004);

18   Harmelin v. Michigan, 501 U.S. 957, 962, 964, 111 S. CT. 2680, 2684-2686 (1991);

19   Rummel v. Estelle, 445 U.S. 263, 274, 100 S. Ct. 1133, 1139, 63 L.Ed.2d 382 (1980).

20   Therefore, under this approach neither the California Courts nor anybody within

21   the executive branch of government have jurisdiction to increase the punishment of

22   second degree murder to the greater punishment of first degree murder. Because the

23   increasing of punishment is legislature in nature, the executive branch of govern-

24   ment lack jurisdiction to increase petitioner's punishment to that of the greater

25   offense's punishment otherwise petitioner would be resentenced by the Board  and

26   nobody elected the BPT or BPH Commissioners  as sentencing Judges.

27

28

                                        26

1               "B"

2   THE GOVERNMENT OF CALIFORNIA FURTHER HAS NOT JURISDICTION TO INCREASE

3   PETITIONER'S PUNISHMENT TO A GREATER OFFENSE BECAUSE HE WAS NOT CHARGED WITH
    THE CRIME OF FIRST DEGREE MURDER AND NONE OF THE ELEMENTS OF FIRST DEGREE

4   MURDER WERE ON THE INFORMATION AND HE WAS NOT CONVICTED OF FIRST DEGREE MURDER

5

6   Petitioner was charged with second degree murder under Penal Code Section 187.

7   None of the essential elements of first degree murder were on the information.

8

9   The California Supreme Court in In re Dannenberg, supra, 23 Cal. Rptr.3d 417,

10  fn. 16 held that the Board can increase the crimes of second degree murder to the

11  higher crime of first degree murder if the prisoner committed the offense by

12  deliberation and prmeditation. However, this holding violates Due Process of Law

13  to the California and United States Constitutions. 5th, 6th, and 14th Amendments.

14  It violates the regulatory law which require the inmate to serve a Minimum Term of

15  ten years and a Maximum Term of 21-years for a second degree murder conviction;

16  It violates the clearly established law by the United States Suprme Court in that

17  it has held that the defendant cannot be punished for a higher degree of the crime

18  than the degree specified. Hicks v. Oklahoma, supra, 447 U.S. 343, 346, 100 S. Ct.

19  at 2229; Whalen v. United States, 445 U.S. 684, 100 S. Ct. 1432, fn. 4 (1980);

20  and it is contrary to the clearly established law by the United States Supreme

21  Court which has held that "No person shall be required to answer for any of the

22  higher crimes and the Court cannot permit a defendant to be tried on charges that

23  are not made in the indictment or information against him." Stirone v. United

24  States, 361 U.S. 212, 217, 4 L.Ed.2d 252, 256, fn. 3 (1960); It violates petitioner's

25  right to notice of the charges of every essential element for a first degree murder

26  offense. Russell v, United States, 369 U.S. 749, 765, 8 L.Ed.2d 240, 251, (1962);

27  Almendarez-Torres v. United States, 523 U.S. 224, 228, 118 S. Ct. 1219, 12223,

28  140 L.Ed. 2d 350 (1998); and it violates petitioner's right to be informed about

1    the nature of the charge against him. Cole v. Arkansas, 333 U.S. 196, 92 L.Ed. 644,

2    68 S. Ct. 514; Herring v. New York, 422 U.S. 853, 857–858, 45 L.Ed.2d 593, 597,

3    95 S. Ct. 2550 (1975).

4    "The indictment or information shall be plain, concise and definitive written
      statement of the essential facts constituting the offense charged."
5
      "The indictment or information shall state for each count the official or
6
      customary citation of the statute, rule, regulation or other provision of the
7    law which the defendant is alleged therein to have violated." Russell v. United

8    States, 369 U.S. 749, 762–763, 8 L.Ed.2d 240, 250, 82 S. Ct. 1038 (1962); United

      States v. Bailey, 444 U.S. 394, 414, 100 S. Ct. 624, 62 L.Ed.2d 515 (1980).
9

10    "An indictment must set forth each element of the crime it charges. Almendarez-
      Torres v. United States, 523 U.S. 224, 228, 118 S. Ct. 1219, 1223, 140 L.Ed.2d
11
      350; Hamling v. United States, 418 U.S. 87, 117, 94 S. Ct. 2887, 2907, 41 L.Ed.2d
12
      590 (1974); Russell v. United States, supra, 369 U.S. at 765, 8 L.Ed.2d at 251.
13    "It is a settled rule that a bill of particulars cannot save an invalid
      indictment and the trial court cannot amend an indictment or information."
14
      Russell v. United States, supra, 369 U.S. at 770–771, 8 L.Ed.2d 254–255.
15

16    Therefore, neither the bill of particulars nor the trial court's instructions to

17    the petit jury can be sufficient to charge petitioner with first degree murder or

18    to inform him regarding the essential elements of first degree murder charge.

19    United States v. Camp, 541 F.2d 737, 740 (8th Cir. 1976); U.S. v. Hooker, 841 F.2d

20    1225, 1227, 1232 (4th Cir. 1988).

21    When the essential elements are missing on the information the trial court lacks

22    jurisdiction to tried the defendant on that charge. U.S. v. Hooker, 841 F.2d at 1232.

23    It is clearly established by the United States Supreme Court that under the Sixth

24    Amendment petitioner has the fundamental right to be informed about the nature and

25    cause of the accusation. Cole v. Arkansas, 333 U.S. 196, 92 L.Ed. 644, 68 S.Ct. 514;

26    Herring v. New York, supra, 422 U.S. 853, 857–858, 45 L.Ed.2d 593, 597, 95 S. Ct.

27    2550.

28

1    Because petitioner was not informed about the nature of the charges against him

2    (First Degree Murder); He was not charged for first degree murder; the essential

3    elements were not on the information; and he was not convicted of first degree

4    murder the State of California is without jurisdiction to increase his punishment

5    of second degree murder conviction to a punishment of first degree murder

6    conviction.

7

8        The increasing of petitioner's punishment of second degree murder to the

9    punishment of first degree murder also violates the clearly established law by

10   the United States Supreme Court which require that every element of the charged

11   offense shall be proved beyond a reasonable doubt. In re Winship, 397 U.S. 358,

12   364, 25 L.Ed.2d 368, 375, 90 S.Ct. 1068 (1970).

13       The increasing of petitioner's punishment to that of the greater offense of

14   first degree murder also violates the clearly established law by the United States

15   Supreme Court in that it has held that under the Due Process Clause of the Fifth

16   Amendment any fact that increases the Maximum penalty for a crime must be charged

17   in an indictment, submitted to the jury, and proven beyond a reasonable doubt."

18   The Fourteenth Amendment commands the same answer in this case involving a State

19   Statute." Apprendi v. New Yersey, 120 S. Ct. 2348, 2355 (2000); Blakely v.

20   Washington, 124 S. Ct. 2531 (2004).

21

22       Because neither the Board of Prison Hearings, the Governor or the Courts have

23   jurisdiction to increase petitioner's punishment of second degree murder to the

24   punishment of first degree murder; and the increasing of it has been in violation

25   and contrary to the crearly established law by the United States Supreme Court

26   and in Violation of the Due Process Clause to the California and United States

27   Constitutions, petitioner requests his immediate release from custody.

28

# GROUND FIVE

WHEN THE CALIFORNIA SUPREME COURT CONSTRUED PENAL CODE SECTION 3041 IT MISAPPLIED IT'S OWN LAW AND CONSTRUED IT CONTRARY TO THE CLEARLY ESTABLISHED LAW BY THE UNITED STATES SUPREME COURT AND IN VIOLATION OF THE DUE PROCESS CLAUSE TO THE CALIFORNIA AND UNITED STATES CONSTITUTIONS.

When the California Supreme Court construed Penal Code Section 3041 it misapplied its own law and "when the state misapplied its own law it creates a protected liberty interest reviewable in Habeas Corpus Petition." Hicks v. Oklahoma, 447 U.S. 343, 346; Ballard v. Estelle, 937 F.3d 453, 456 (9th Cir. 1991).

In In re Dannenberg, 34 Cal. 4th 1061 the California Supreme Court construed Penal Code Section 3041 in a way to evade consideration of constitutional issues by the Federal Courts of Parole Suitability Decisions. See Sass v. Cal. Bd. of Prison Terms, 376 F. Supp.2d 975 (E.D. Cal. 2005).

"Federal courts may not second-guess the State Court's construction of its own state law unless "it appears that its interpretation is an obvious subterfuge to evade consideration of federal issue." Mullaney v. Wilbur, 421 U.S. 684, 691, 95 S. Ct. 1881, fn. 11, 44 L.Ed.2d 508 (1975); Rogers v. Tennessee, 532 U.S. 451, 457, 121 S. Ct. 1693, 149 L.Ed.2d 697 (2001); Hubbard v. Knapp. 379 F.3d 773, 780 (9th Cir. 2004).

The United States Supreme Court further has held that, "When a prison regulation or practice offends a fundamental constitutional guarantee, federal courts will discharge their duty to protect constitutional rights." Johnson v. Avery, 393 U.S. 483, 486, 89 S. Ct. 747, 749, 21 L.Ed.2d 718 (1969); Procunier v. Martinez, 416 U.S. 396, 405-406, 94 S. CT. 1800, 1807-1808 (1974); Jones v. N.C. Prisoners' Labor Union, INC. 433 U.S. 119, 143, 97 S. Ct. 2532, 2547 (1977).

In Dannenberg the Court stated that in 2001 the Legislature amended Penal Code Section 3041 favorable to the prisoner who are serving life terms. That the 2001 amendment to Subsection 3041 (b) appears to assume the Board's present mode of procedure.

1  That the Legislature has not disturbed the Board's interpretation of Section 3041.

2  See In re Dannenberg, supra, 23 Cal. Rptr.2d at 430-438.

3     Because the California Supreme Court assumed the Legislature wanted the Board's

4  present mode of procedure the Court construed Penal Code Section 3041 contrary to

5  the intent of the Legislature, contrary to the principles of statutory construction

6  and contrary to the clearly established law by the United States Supreme Court.

7     The California Supreme Court held that the BPT can deny to every prisoner who

8  are serving life terms our release on parole for the rest of our natural life

9  based only on the commitment offense factor if the Board believes the prisoners

10 are risk to the public safety. See In re Dannenber, supra, 23 Cal. Rptr.3d at 431-

11 432, 439-440, 442-443.

12    Previous to the decision in Dannenberg the BOard was denying parole release dates

13 to over than 99 percent of the inmates who were eligible for release on parole and

14 to those who the Board found suitable for a parole release date the Governor cance-

15 led their release date. See In re Dannenberg, supra, 23 Cal. Rptr.3d at 448.

16    If previous to the Court's decision in Dannenberg the Board and the Governor were

17 capriciously and arbitrarily denying almost to every inmate their release on  parole

18 now when they don't have to consider the factors and the guidelines, but only the

19 commitment offense factor to find the inmates suitable for a parole release date

20 they are going to be denying release on parole in a more capricious and arbitrary

21 manner.

22    This holding of the California Supreme Court is contrary to the clearly establi-

23 shed law by the United States Supreme Court in that it has held:

24 "We have repeatedly hold that the Government's regulatory interest in community
25 safety can in appropriate circumstances, outweight an individual's liberty
   interest when the individual has been arrested for a specific category of
26 extremely serious offenses." That "There is nothing inherently unttainable
27 about a prediction of future criminal conduct." U.S. v. Salerno, 481 U.S. 739,
28 748-751, 109 S. CT. 2095, 2102-2104 (1987) and cases cited therein.

1    It is also contrary to the clearly established law by the United States Supreme

2    Court which has held that the laws shall be enacted in a way to prevent arbitrary

3    application by those who apply them. Grayned v. City of Rockford, 408 U.S. 104,

4    108-109; Kolander v. Lawson, 461 U.S. 352, 357-358, 103 S.Ct. 1855, 1858; Smith

5    v. Goguen, 415 U.S. 566, 574, 94 S. Ct. 1242, 1247-1248, 39 L.Ed.2d 605 (1974).

6

7    It is a well established principle of statutory construction that a court in

8    construing a statute it should give significance to every word, phrase, sentence

9    and part of an act to ascertain the intent of the Legislature so as to effectuate

10   the purpose of the law. People v. Black, 32 Cal.3d 1, 5-6, 184 Cal. Rptr. 454,

11   455-456; People v. Craft, supra, 41 Cal.3d 554, 559-560, 224 Cal. Rptr. 626, 629.

12   The California Supreme Court in excess of its jurisdiction failed to give signi-

13   ficance to the words and phrases of Penal Code Subsection 3041 (a) as it is requi-

14   red by the State's Law when a statute is construed.  The words and phrases in

15   Penal Code Subsection 3041 (a) cannot be regarded as mere surplusage; They means

16   something. Carter v. U.S., 530 U.S. 255, 262, 120 S. Ct. 2159, 2165 (2000).

17

18   The Federal Constitution protects the prisoners when the State misapplied its

19   own law. The clearly established law by the United States Supreme Court hold:

20   "State statutes or regulations can create a right triggering due process pro-

21   tection to ensure that the state created right is not arbitrarily abrogated."

     "The touchstone of the due process is protection of individuals against arbi-

22   trary action of government." (Dent v. West Virginia, 129 U.S. 114, 132, 9 S.

23   Ct. 231, 233, 32 L.Ed. 623 (1889)). Wolff v McDonnell, 418 U.S. 539, 557-558,

24   94 S. Ct. 2963, 2975-2976 (1974); Meachum v. Fano, 427 U.S. 215, 225-226,

     96 S. Ct. 2532, 2539 (1976).

25

26   The California Supreme Court failed to give significance to the command of the

27   Legislature in Penal Code Subsection 3041 (a) which requires that "One year prior

28   to the prisoner's minimum term the Board shall meet with the prisoner and shall

32

1   normally set a parole release date as provided in Penal Code Section 3041.5."

2   See In re Ramirez, 114 Cal. Rptr.2d 381, 397 (1 Dist. 2001).

3   Penal Code Subsection 3041 (a) also command the Board to establish criteria for

4   the setting of Parole Release Dates and in doing so shall consider the number of

5   victims of the crime for which the prisoner was sentenced and other factors in

6   mitigation and aggravation of the crime. In re Seabock, 140 Cal. App.3d 29,

7   37-38, 189 Cal. Rptr. 310, 315 (1983).

8   The Board established criteria for the setting of parole release dates. See

9   Title 15 of CCR Sections 2400-2411.

10   The Board established matrices to set the base ter. Title 15 of CCR Section

11   2403. The Matrices to set the base term are codified guidelines. In re Stanworth,

12   33 Cal. 3d 176, 182, 187 Cal. Rptr. 783, 787 (Cal. 1982); In re Seabock, supra,

13   140 Cal. App.3d at 40, 189 Cal. Rptr. at 317, fn. 9.

14   However, the California Supreme Court directed the Board to disregard the Matri-

15   ces to set the base term. In re Dannenberg, 23 Cal. Rptr.3d at 433 and fn. 15.

16   This holding of the California Supreme Court to eliminate from consideration

17   the matrices to set the base term is contrary to the United States Supreme Court

18   precedent that when the crime is divided into degrees the courts shall draw lines

19   between the sentences. Solem v. Helm, supra, 77 L.Ed.2d at 652-653.

20   In Penal Code Subsection 3041 (a) the State Legislature commanded the Board to

21   draw the lines between the sentences (the Matrices) as it is required by the

22   United States Supreme Court in Solem v. Helm, supra, 77 L.Ed.2d at 652-653.

23   However, the California Supreme Court in excess of its jurisdiction, contrary to

24   the intention of the Legislature and contrary to the clearly established law by

25   the United States Supreme Court overruled the matrices to set the base term.

26

27

28

1   Penal Code Subsection 3041 (a) and CCR 2401 require the Board to set the parole

2   release date in a manner that provides uniform terms for offenses of similar

3   gravity and magnitude with respect to the threat to the public. CCR 2402 and 2403

4   also require the Board to consider the criteria to find the inmates suitable for a

5   parole release date and to set the base term according to the matrices. The

6   regulations are commanded by Penal Code Subsection 3041 (a). By directing the Board

7   to deny prisoners our release date only based on the commitment offense factor the

8   court indirectly is directing the Board to disregard the criteria to find the inmates

9   suitable for a parole release date. This holding of the California Supreme Court

10  is contrary to the command of the Legislature in Penal Code Subsection 3041 (a)

11  that the Board shall establish criteria to find the inmates suitable for a parole

12  release date and to set the base term at the initial parole suitability hearing.

13      The words and phrases in Penal Code Subsection 3041 (a); and the rules in Title 15

14  of CCR 2400 to 2411 cannot be regarded as mere surplusage; they mean something.

15  Carter v. U.S. , supra, 530 U.S. 255, 262, 120 S. Ct. 2159, 2165.

16      By disregarding the circumstances to find prisoners suitable for a parole release

17  date the Board is disregarding our good conduct in prison, the efforts we have made

18  to obtain our high school diploma and or our GED Certificate, the efforts we have

19  made to complete vocationals and Self-Help programs and the credits we have earned

20  during 20-years of participation in the programs. Everything has been but empty

21  formulas of words. This holding of the California Supreme Court is contrary to the

22  clearly established law by the United States Supreme Court which has held that

23  "The prvalent modern phylosophy of penalogy is that the punishment shall fit the

24  offender and not merely the crime." (Williams v. New York, 337 U.S. 241, 247-248,

25  69 S. Ct. 1079, 1083-1084, 93 L.Ed. 1337 (1949)." Unitd States v. Grayson, 438 U.

26  S. 41, 45, 98 S. Ct. 2110, 2113 (1978); and contrary to the precedent of the

27  California Supreme Court. See In re Minnis, 7 Cal.3d 639, 644, 102 Cal. Rptr. 749,

28  752 (1972); In re Rodriguez, 14 Cal.3d 639, 650, 122 Cal. Rptr. 252, 560 (Cal. 1975).

1    The holding of the California Supreme Court that the Board can deny the release

2    on parole to inmates only on the commitment offense circumstance is also contrary

3    to the clearly established law by the United States Supreme Court which has held:

4    "The decision of parole turns on a "discretionary assesment of a multiplicity of

5    imponderables, entitling primarily what a man is and what he may become rather

6    than simply what he has done." Greenholtz v. Inmates of Nebraska Penal & Corr.'

7    442 U.S. 1, 10, 99 S. Ct. 2100, 2105 (1979); Board of Pardons v. Allen, 482 U.S.

8    369, 107 S. Ct. 2415, fn. 5 (1987).

9

10    The California Supreme Court further contrary to the law of statutory construc-

11    tion and in an unreasonable manner considered the Legislative history of the ISL

12    as well as the circumstances of the enactment of the statute to determine the

13    intent of the Legislature. People v. Craft, supra, 41 Cal.3d at 560, 224 Cal. Rptr.

14    at 629.  From 1975 to 1978 the Legislature made several amendments to the Indetermi-

15    nate Sentence Law (ISL). See In re Williams, 53 Cal. App.3d 10, 15, 125 Cal. Rptr.

16    457, 460 (1975); In re Dannenberg, supra, 23 Cal. Rptr.3d at 427, 435-437.

17    The amendments to the ISL were made because the Board in an arbitrary manner was

18    imposing excessive punishments to the prisoners. See In re Minnis, supra, 7 Cal.3d

19    639, 102 Cal. Rptr. 749; In re Rodriguez, supra, 14 Cal.3d 639, 122 Cal.Rptr. 552;

20    In re Lynch, 8 Cal.3d 410, 105 Cal. Rptr. 217 (1972); In re Sturm, 11 Cal.3d 258,

21    113 Cal. Rptr. 361 (1974); In  re Williams, supra, 53 Cal. App. 3d 10, 125 Cal.

22    Rptr. 457.  In In re Dannenberg, supra, 23 Cal. Rptr.3d at 435-436, 441-442 the

23    California Supreme Court conceded that previous to the amendments to the ISL the

24    Board was arbitrarily and capriciously imposing excessive punishment to prisoners.

25    In order to prevent the Board from arbitrarily and capriciously denied prisoners

26    their release dates the Legislature commanded the Board to set criteria in order

27    to find the inmates suitable for a parole release date and guideline, the matrices,

28    to set the base term. Penal Code Subsection 3041 (a).

1    Now the California Supreme Court in Dannenberg no only failed to consider the

2    history of the ISL in a way to prevent the Board from arbitrarily applied the law

3    (from capriciously and arbitrarily denied us (prisoners) our release date or

4    release on parole) but it construed the ISL in a way that it is encouraging the

5    Board to deny us our release on parole in a more capricious and arbitrary manner

6    than previous to the amendments to the ISL.

7    This holding of the California Supreme Court is contrary to the clearly

8    established law by the United States Supreme Court which has held that the laws

9    shall be enacted in a way to avoid arbitrary and capricious enforcement. See

10   Grayned v. City of Rockford, 408 U.S. 104, 108–109; Kolander v. Lawson, 461 U.S.

11   352, 357–358, 103 S. Ct. 1855, 1858; Smith v. Goguen, 415 U.S. 566, 574,

12   94 S.Ct. 1242, 1247–1248, 39 L.Ed.2d 605 (1974).

13

14   For the foregoing reasons the construction of Penal Code Section 3041 in In re

15   Dannenberg, supra, 34 Cal. 4th 1061 shall be declared void and unconstitutional

16   because the construction of Penal Code Section 3041 is contrary to the law of

17   statutory construction, it is contrary to the Legislature's intent, it violates

18   the Due Process Clause to the California and United States Constitutions and

19   because it is contrary to the clearly established law by the United States Supreme

20   Court.

21

22

23

24

25

26

27

28

GROUND SIX

THE CALIFORNIA SUPREME COURT CONSTRUED PENAL CODE SECTION 3041 IN A WAY THAT IT TURNED THE INDETERMINATE SENTENCE LAW INTO A VAGUE AND DISCRIMINATORY LAW IN VIOLATION OF THE ADA AND THE DUE PROCESS CLAUSE TO THE CALIFORNIA AND UNITED STATES CONSTITUTIONS.

The State's vague law is reviewable by the Federal Courts.

"Where the statute or regulation is challenged as vague because individuals to whom it plainly applies simply cannot understand what is required of them and do not wish to forswear all activity arguably within the scope of the vague terms abstention is not required." Procunier v. Martinez, 416 U.S. 396, 94 S. Ct. 1800, fn. 5 (1974).

"A"

In Dannenberg the Court held that inmates who believe their fonfinements have become constitutionally excessive to take their claims to court and the court will review them on proportionally grounds. Dannenberg, supra, 23 Cal. Rptr.3d at 441–443. However, the Court didn't state how much time is proportionate for second degree murder convictions (15–years to life sentences).

In Dannenberg the Court repeattedly stated that inmates sentenced for second degree murder convictions are sentenced to serve life maximum terms. See In re Dannenberg, supra, 23 Cal. Rptr.3d at 420–421, 429–432, 434, 436, 439.

Then how the 15–years to life sentences can be disproportionate when on the Court's Judgment every second degree murder sentence is a natural life maximum sentence?

The principle of gross disproportionality only exist on death penalty sentences. Harmelin v. Michigan, 501 U.S. 957, 995, 111 S. Ct. 2680, 2701–2702 (1991). But if it exist in life sentences it is applied only in the "exceedingly rare" and "extreme" case. Lockyer v. Andrade, 538 U.S. 63, 73, 123 S. Ct. 1166, 1173 (2003); Harmelin v. Michigan, supra, 501 U.S. 957, 063, 111 S. Ct. 2680, 2685.

1   Therefore, under the principle of disproportionality the sentence of an inmate

2   who was sentenced to 15-years to life for second degree murder conviction will be

3   an exceedingly rare and extremely rare finding of disproportionality.

4   This holding of the California Supreme Court is contrary to the clearly establi-

5   shed law by the United States Supreme Court which  has held:

6   "The Government's regulatory interest in community safety can, in appropriate

7   circumstances, outweight an individual's liberty interest when the individual
    has been arrested for a specific category of extremely serious offenses."

8   U.S. v. Salerno, supra, 481 U.S. 738, 748-750, 107 S. Ct. 2095, 2102-2104, and

9   cases cited therein.

10  The United States Supreme Court has held: "It would certainly be dangerous if

11  the Legislature could set a net large enough to catch all possible offenders,
    and leave  it to the courts to step inside and say who could be rightfully

12  detained and who should be set at large, this would, to some extent, substitute

13  the judicial for the Legislative department of government." Kolander v. Lawson,

14  supra, 461 U.S. 352, 103 S. Ct. 1855, fn. 7; Smith v, Goguen, 415 U.S. 566,
    94 S. Ct. 1242, fn. 9 (1974).

15

16  The California Supreme Court did exactly that. The Court held that the BPT can

17  denied parole to every inmate only on the commitment offense factor and if the

18  inmate believe he has been retained beyond the constitution allows then to take

19  his claim to court and the court will review it on disproportionality grounds.

20  See In re Dannenberg, supra, 23 Cal.  Rptr.3d at 441-443. *

21  "A Statute which either forbids or requires the doing of an act in terms so

22  vague that men of common intelligence must necessarily guess at its meaning and
    differs as to its application, violates the first essential of the Due Process

23  of Law." Smith v. Goguen, supra, 415 U.S. 566, 94 S. Ct. 1242, 39 L.Ed.2d 605,

24  fn. 8.

25  * The Court didn't say how those fellow inmates who have the disability to lear
    high enough to present their claims to court can take their claims to court.

26  Therefore, Penal Code Section 3041 was also construed in a discriminatory manner
    and in violation of the ADA. The ADA apply to prisoners. See Pennsylvania Dept.

27  of Corrections v. Yeskey, 524 U.S. 206, 118 S.Ct. 1952, 141 L.Ed.2d 215 (1998);
    42 U.S.C Section 12132. In that only the wealthy and the educated can take their

28  parole decision claims to court.

1    The California Supreme Court in In re Dannenberg, supra, 23 Cal. Rptr.3d at 421,

2    443 held that the Board can denied to prisoners our release on parole for the rest

3    of our natural life only by pointing to some evidence that the particular circums-

4    tances of the crime—circumstances beyond the minimum elements of the conviction—

5    indicate exceptional callousness and cruelty with trivial provocation, and that

6    those suggested the inmate remains a danger to public safety.

7    The Court didn't say what are the circumstances beyond the minimum elements of

8    the prisoner's conviction the Board can consider to denied a prisoner his release

9    on parole for the rest of his natural life.

10    The Courts have recognized that all second degree murder by their nature involve

11    a disregard for the life of another. In re Rosenkrantz, 80 Cal. App. 4th 409,

12    95 Cal. Rptr.2d 279, fn. 13 (Cal. App. 2 Dist. 2000); All second degree murders

13    by definition involve some callousness—i.e., lack of emotion or sympathy, emotional

14    insensitivity, indifference to the feelings and suffering of others." In re Scott,

15    119 Cal. App. 4th 871, 891, 15 Cal. Rptr.3d 32, 45 (2004); A Florida Court also

16    recognize that all killings are atrocious." Proffitt v. Florida, 428 U.S. 242, 255,

17    96 S.Ct. 2960, 2968 (1976);  "An ordinary person could honesly believe that every

18    unjustified, intentional taking of human life is "especially heinously, outrageously

19    or wantonly vile, horrible, inhuman." Godfrey v. Georgia, 442 U.S. 420, 428-429,

20    100 S. Ct. 1759, 1764-1765; Maynard v. Cartwright, 486 U.S. 356, 364, 108 S. Ct.1853,

21    1859 (1988).

22    "The minimal elements of the crime are symply that a person dies at the hands of

23    another with the perpetrator exhibiting the requisite intent. Any fact in addition

     to this could be one viewed as "more than minimally necessary to convict." For

24    example, one BPT panel may believe that use of a knife per se causes undue suffering;

25    another may believe use of any weapon where death is not instantaneous, probably

26    the vast majority of murders, exhibits callousness. A conclusion can easily be

     reached by those who want to claim that the facts of any murder are such that they

27    prove more than those facts minimally necessary for a conviction. There can be no

28    doubt that Dannenberg gives carte blanche to the BPT to issue a mere characteriza-

1   tion of the crime to support a denial of parole."

2

3   For the members of the Board no matter how or the murder occurred or the motive

4   for it the Board always find that the prisoner committed the crime in an especially

5   cruel or callous manner, and that the crime was carried out in a way that "demons-

6   trates an exceptionally callous disregard for human suffering" and that the motive

7   for the crime "was inexplicable or very trivial in relation to the offense." That

8   the prisoner needs therapy in order to face, discuss, understand and cope with

9   stress in a non-destructive manner. That until progress is made  the  prisoner

10  continues to be  unpredictable and a threat to others. See In re Dannenberg, supra,

11  23 Cal. Rptr.3d at 423-424; In re Ramirez, 114 Cal. Rptr.2d 381, 388; In re

12  Rosenkrantz, 80 Cal. App. 4th 409, 418, 95 Cal. Rptr.2d 279, 286, fn. 10, and

13  footnotes 10 and 14; In re Scott, 199 Cal. App. 4th 871, 883, 889, 15 Cal. Rptr.3d

14  at 39, 44.

15  Therefore, no matter what are the circumstances of the crime, the evidence shows,

16  that the Board always had found and it will find in every murder crime-circumstances

17  beyond the minimum elements of the crime-and that the prisoner committed the crime

18  with exceptionally callousness and cruelty with trivial provocation.

19  Therefore, without guidelines to find the inmate suitable for a parole release

20  date and to set the base term the ISL is vague and the construction of Penal Code

21  Section 3041 in In re Dannenberg, 34 Cal. 4th 1061 shall be declared unconstitutio-

22  nal and void by this court because it violates petitioner's Due Process Rights to

23  the California and United States Constitutions. 5th, 6th, and 14th Amendments.

24

25  Due to the fact that petitioner was not charged with first degree murder under

26  Penal Code Section 189 neither the Courts nor anybody within the executive branch

27  of government have jurisdiction to increase petitioner's conviction of second

28  degree murder to a conviction of first degree murder in that the elements of first

1    degree murder were not on the information. Stirone v. United States, 361 U.S. 212,

2    217, 4 L.Ed.2d 252, 256, fn. 3 (1960); U. S. v. Hooker, 841 F.2d 1225, 1231-1232

3    (4th Cir. 1988); and were not proved beyond a reasonable doubt. In re Winship,

4    supra, 397 U.S. 358, 364, 25 L.Ed.2d 368, 375, 90 S.Ct. 1068.

5    Therefore, because petitioner was not charged with first degree murder the

6    elements of a first degree murder cannot be considered to denied his release on

7    parole. The consideration of the elements of first degree murder to denied

8    petitioner his release on parole also violates Apprendi v. New Yersey, 120 S. Ct.

9    2348, 2355 (2000); and Blakely v. Washington, 124 S. Ct. 2531 (2004) that "Under

10   the due process clause of the Fifth Amendment and the notice and jury trial

11   guarantees of the Sixth Amendment, any fact that increases the maximum penalty for

12   a crime must be charged in an indictment, submitted to the jury, and proven beyond

13   a reasonable doubt."

14   Then, if the elements of a first degree murder charge cannot be considered by the

15   Board to deny petitioner his release on parole, then what are the circumstances to

16   deny his release on parole for the rest of his natural life or to increase his

17   punishment of second degree murder conviction to a punishment of first degree

18   murder conviction?

19   The United States Supreme Court requires lines between the sentences when the

20   crimes are divided into degree. Solem v. Helm, supra, 77 L.Ed.2d at 652-653.

21   The United States Supreme Court further has held:

22   "If arbitrary and discriminatory enforcement is to be prevented laws must provide

23   explicit standards for those who apply them." Greyned v. City of Rockford, 408 U.

     S 104, 108-109; Kolander v. Lawson, supra, 461 U.S. 352, 357-358, 103 S. Ct. 1858.

24   "Although, the doctrine focuses both on actual notice to the citizens and

25   arbitrary enforcement, we have recognized recently that the more important

26   aspect of the vagueness doctrine "is not actual notice, but the other principle

     element of the doctrine—the requirement that the legislature establish minimal

27   guidelines to govern law enforcement." (Smith v. Goguen, 415 U.S. 566, 574,

28   94 S. Ct. 1242, 1247-1248, 39 L.Ed.2d 605 (1974).

"When the Legislature fails to provide such minimal guidelines, a criminal statute may permit "a standarless sweep that allows policemen, prosecutors, and juries to pursue their personal predictions." Id., at 575, 94 S. Ct., at 1248.) Kolander v. Lawson, 461 U.S. at 538, 103 S. Ct. at 1858.

"One of the premises of the void for vagueness doctrine is that an excessively vague statute promotes arbitrary and iscriminatory law enforcement by delegating (too much) power to the law-enforcement officers." Grayned v. City of Rockford, 408 U.S. 104, 108-109; Kilander v. Lawson, supra, 461 U.S. 352, 357, 103 S. Ct. 1855, 1858; Bear v. City of Wauwatosa, 716 F.2d 1117, 1124 (7th Cir. 1983); United Beverage Co. v. Ind. Alcoholic Beverage, 760 F.2d 155, 158 (7th Cir. 1985).

The California Legislature commanded the BPT to establish criteria and guidelines to find the inmates suitable for parole release dates and to set the base ter. See Penal Code Subsection 3041 (a); and Title 15 of CCR Sections 2401, 2402, and 2403.

Therefore, the Legislature established or commanded the Board to establish the guidelines required by the United States Supreme Court to avoid vagueness and to prevent the government from capriciously and arbitrarily apply the law.

However, the California Supreme Court overruled most of Penal Code Subsection 3041 (a). (It only left intact the requirement that one year previous to the inmate minimum term the Board consider the inmates for a parole release dates). The Rest of it was overruled. The Court overrruled the Matrices to set the base term. See In re Dannenberg, supra, 23 Cal. Rptr.3d 417, 433, and fn. 15.

And by holding that the Board can denied to every prisoner our release on parole based only on the commitment offense factor the Court impliedly is directing the Board to disregard the criteria to find the prisoners suitable for a parole release date.).

The Court further is directing the Board to increase second degree murder crimes to first degree murder crimes. See In re Dannenberg, 23 Cal. Rptr.3d 417, fn. 16.

1    By directing the BPT to increase the crime the California Supreme Court is

2    directing the Board to resentence the Inmates who were convicted for Second Degree

3    Murder and increase their punishment even when nobody elected the BPT commissioners

4    as Sentencing Judges.

5    Previous to the decision in Dannenberg the Board was denying parole to over than

6    99 percent of the inmates who were suitable for a parole release date and to those

7    who the Board found suitable for a parole release date the Governor reversed the

8    suitability findings. See In re Dannenberg, 23 Cal. Rptr.3d at 448.

9    Therefore, if previous to the decision on Dannenberg—when the Board had to

10   consider the guidelines to find the inmate suitable for a parole release date—

11   the Board and the Governor were capricously and arbitrarily denying prisoners our

12   release on parole now when they don't have to consider the guidelines they are

13   denying release on parole in a more capricious and arbitrary manner.

14   The United States Supreme Court clearly established law require guidelines and

15   standards to prevent the government from arbitrarily applied the law, however, the

16   California Supreme Court not only failed to provide guidelines to avoid vagueness

17   and arbitrariness on parole decisions, but it eliminated the minimum guidelines that

18   were in effect which guidelines were commanded by the Legislature.

19

20   Therefore, the California Supreme Court turned the ISL into a vague law more

21   vague than the vague it was previous to the construction of Penal Code Section 3041

22   In re Dannenberg, supra, 34 Cal.4th 1061 and it construed Penal Code Section 3041

23   in a discriminatory manner in violation of the ADA and in violation of the Due

24   Process Clause to the California and United States Constitutions. 5th, 6th and 14th

25   Amendments.

26

27

28

43

1   For the foregoing reasons this Court shall declares the Decision in In re

2   Dannenberg, supra, 34 Cal. 4th 1061 unconstitutional on vagueness grounds and in

3   violation of the ADA and in violation of the Due Process Clause to the California

4   and United States Constitutions. 5th, 6th, and 14th Amendments.

5

6

7   I, Samuel Arreola, swear under penalty of perjury that the foregoing is true

8   and correct. Signed at Soledad, California on March 9, 2006.

9

10

11

12

13                                          _Arreola_
                                            Samuel Arreola

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28




### PROOF OF SERVICE BY MAIL

(C.C.P. §§1013A, 2015.5)

STATE OF CALIFORNIA )
                  ) SS.
COUNTY OF MONTEREY )

I,   Samuel Arreola  , am a resident of the State of California,

County of Monterey. I am over the age of 18 years and I   am/am not   a party to the within action.

My  business/residence  address is P.O. Box 689, Soledad, California, 93960-0689.

On  March 9, 2006 , 20 06 , I served the foregoing:

  HABEAS CORPUS PETITION

on the parties listed below by placing a true copy thereof enclosed in a sealed envelope with postage

fully prepaid in the United States mail at Soledad, California, addressed as follows:

CALIFORNIA SUPERIOR COURT       OFFICE OF ATTORNEY GENERAL
FOR THE COUNTY OF FRESNO        2550 Mariposa Mall No. 5090
1100 Van Ness                    Fresno, Ca. 93721
Fresno, Ca. 93724-0002

       There is regular delivery service by the U.S. Postal Service between the place of mailing

and the places so addressed.

       I declare under the penalty of perjury under the laws of the State of California that the

foregoing is true and correct.

Executed this   9th   day of  March , 20 06 , at

Soledad, California.

/S/ _Arreola_
             Samuel Arreola